Larry Wayne Mullen Jr. v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-303-CR

Â Â Â Â Â LARRY WAYNE MULLEN, JR.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 249th District Court
Johnson County, Texas
Trial Court # F34755
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Larry Wayne Mullen, Jr. pled guilty to one count of manslaughter. He let the jury decide his
punishment, and it assessed punishment at 20 years in prison and a $10,000 fine. Mullen brings
two issues on appeal regarding: 1) the propriety of the Stateâs closing argument; and 2) the
propriety of a photograph admitted into evidence. We affirm.
Background
Â Â Â Â Â Â On the night of November 14, 2000, the Johnson County Sheriffâs Office was dispatched to
the home of Bonnie Jo and Larry Wayne Mullen, Jr. regarding a shooting. Sergeant Isles was the
first to arrive. When he arrived, a woman directed him to a weapon on the floor and informed
him âtheyâ were in back. He pulled back a curtain to find Bonnie Jo on the floor with a gunshot
wound to her head. Mullen and his father had been trying to perform CPR on Bonnie Jo. Isles
called in EMS but it was too late. Bonnie Jo was dead.
Jury Argument
Â Â Â Â Â Â In his first issue, Mullen contends the Stateâs jury argument was outside the record. The
portion of the argument of which Mullen complains is as follows:
Let me ask you this. Based on the evidence before you, should the brutal execution of
a defenseless woman be trivialized by a probated sentence? Should this beâshould this
be, Bonnie, we donâtâwe know it was horrible, we know you were pleading for your life.

After a comment by Mullen, his attorney objected, stating:
Your Honor, Iâm going to have to object to that. I donât think there was any testimony
whatsoever of what heâs saying as far as what she said or didnât say, so Iâm going to have
to object to that[.] I think its inflammatory.

The trial court instructed the jury to ârecall what the evidence was.â 
Â Â Â Â Â Â The State contends that Mullenâs issue was not preserved for our review. See Tex. R. App.
P. 33.1(a)(2). Because there was no express ruling on Mullenâs objection, we cannot consider the
Stateâs preservation argument until we determine whether the trial court implicitly ruled on the
objection. Gutierrez v. State, 36 S.W.3d 509, 511 (Tex. Crim. App. 2001). It appears from the
record that when the trial court instructed the jury to recall the evidence, it implicitly sustained
Mullenâs objection and instructed the jury to limit its consideration to the evidence. However,
Mullen did not request a mistrial. â[A] defendant's failure...to pursue to an adverse ruling his
objection to a jury argument forfeits his right to complain about the argument on appeal.â 
Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). See Mathis v. State, 67 S.W.3d
918, 927 (Tex. Crim. App. 2002) (â[W]e decline to overrule Cockrell, a case perfectly in line with
Rule of Appellate Procedure 33.1 and the policies underlying preservation of error.â). Thus,
Mullen has not preserved his complaint for our review.
Â Â Â Â Â Â Mullenâs first issue is overruled.
Photograph
Â Â Â Â Â Â In his second issue, Mullen contends that the trial court erred in admitting a photograph
because it created an unfair prejudice which outweighed any probative value it may have had. The
Texas Rules of Evidence provide that although relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403.
Â Â Â Â Â Â The admissibility of a photograph is within the discretion of the trial court and is reviewed
for an abuse of discretion. Chamberlain v. State, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999);
Kelley v. State, 22 S.W.3d 642, 644 (Tex. App.âWaco 2000, no pet.). We will not find error
in a trial courtâs evidentiary ruling unless it falls outside âthe zone of reasonable disagreement.â 
Narvaiz v. State, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992); Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1990).
Â Â Â Â Â Â In response to a Rule 403 objection to a photograph, the trial court must decide whether the
probative value of the photograph is substantially outweighed by the danger of unfair prejudice. 
Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim. App. 2001); Najar v. State, 74 S.W.3d 82, 89
(Tex. App.âWaco 2002, no pet.). When making this determination, the trial court should
consider âthe number of photographs, the size of the photograph, whether it is in color or black
and white, the detail shown in the photograph, whether the photograph is gruesome, whether the
body is naked or clothed, and whether the body has been altered since the crime in some way that
might enhance the gruesomeness of the photograph to the [defendantâs] detriment.â Reese v.
State, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000); Najar, 74 S.W.3d at 89.
Â Â Â Â Â Â The State offered exhibits 7 and 8 at the same time through the testimony of Sergeant Marvin
Isles. The exhibits were 3.5" x 5" color photographs of Bonnie Jo. Exhibit 7 depicts a trail and
large pool of blood on the floor which appears to have flowed from Bonnie Joâs head. The head
and clothed shoulders of Bonnie Jo are seen in the lower right corner of the photograph. Exhibit
7 was offered to show that Bonnie Joâs body had been moved from its original location first by
Mullen and then by EMS personnel. Exhibit 8 is a photograph of Bonnie Joâs face, covered in
blood. It was offered to show her condition when Sergeant Isles arrived at the Mullenâs home and
to show the bullet wound to her head. Mullen only objected to exhibit 8, arguing that its
introduction would inflame the minds of the jurors, causing an unfair prejudice to Mullen. A
much larger (8" x 10") color photo of Bonnie Joâs face, after it had been cleaned to some extent,
showing the bullet wound was admitted later during the medical examinerâs testimony without
objection.
Â Â Â Â Â Â As would be any photograph depicting a gunshot wound to the head which caused the death
of that person, exhibit 8 is gruesome. However, we do not find that its probative value was
substantially outweighed by the danger of unfair prejudice. Thus, the trial court did not abuse its
discretion in admitting the photograph.
Â Â Â Â Â Â Mullenâs second issue is overruled.
Conclusion
Â Â Â Â Â Â Having overruled Mullenâs issues on appeal, the trial courtâs judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray
Affirmed
Opinion delivered and filed October 9, 2002
Do not publish
[CR25]



 which was
within 20 days of trial.  McClentonÂs
attorney, who had been appointed on August 27, 2002, told the trial court that
he had never been told that copies of the tapes were available for him; that for
Âtwo or three monthsÂ he had the investigating officerÂs report that refers to
the recorded statements; that about two weeks before he had Âre-readÂ the
report and realized that there were two tapes; on February 10 he visited the district
attorneyÂs office and obtained copies of the tapes; and that prior to then the
tapes had not been ÂprovidedÂ to him.

The district attorney informed the trial court
that copies of the tapes (of McClenton and two others charged with the robbery)
were made on January 6, 2003; that the copies had been in the district
attorneyÂs file and available for defense counsel since then; that his office
had an Âopen-file policyÂ; that the file had been open since the case was
filed; that he furnished defense counsel with the written offense report; and
that as far as he knew, McClentonÂs attorney had knowledge of the tapes and
their availability.

Several courts have addressed similar scenarios.[1]Â  For example, in Tinker v. State, the defendant argued that his recorded statements
were improperly admitted because the State failed to provide defense counsel
with copies at least 20 days before trial.Â 
Tinker v. State, 148 S.W.3d
666 (Tex. App.ÂHouston [14th Dist.] 2004, no pet. h.). Â The defense attorney admitted that he was
aware of his clientÂs taped statements and that he had free access to his
clientÂs file at the district attorneyÂs office, but the tapes were not in the
file.Â  The prosecutor noted that the
tapes are not kept in individual files but are kept in a separate filing
cabinet and that defense counsel could have obtained them from that cabinet.Â  Following Lane,
the court of appeals found:Â  ÂNothing in
the record indicates defense counsel specifically requested or was denied
access to the tape recorded statements at any time prior to trial.Â  Where, as here, defense counsel is aware of
the existence of taped statements, the State is only required to Âpermit
reasonable accessÂ to a copy.ÂÂ  Id. at 673.

Likewise, we read McClentonÂs trial attorneyÂs
statements to the trial court to be that he was aware of the recorded
statements two to three months before trial and that he knew he had access to
them.Â  We thus follow Lane and hold that the State ÂprovidedÂ
the tapes because McClentonÂs trial attorney was aware of the recorded
statements and had access to them.Â  Lane, 933 S.W.2d at 516.Â  We overrule the first issue.

Victim-Impact
Testimony

Â Â Â Â Â Â Â Â Â  McClentonÂs
second issue complains that the trial court erred in admitting Âvictim-impactÂ
testimony during the guilt-innocence phase of the trial.Â  Specifically, he complains of the following
State-elicited testimony of Diane Kempenski, the clerk of the convenience store
(the A-1 Drive In) allegedly robbed by McClenton and three others:

Q.Â Â Â Â Â  Now, were you placed in fear of imminent
bodily injury or death by these defendants who robbed the A-1 Drive In?

Â 

A.Â Â Â Â Â  Yes, sir.

Â 

Q.Â Â Â Â Â  Tell the jury how you felt while this
robbery was going.

Â 

A.Â Â Â Â Â  I though they were going to kill me.Â  I kept telling them, you know, ÂPlease donÂt
kill me, just take whatever you want.ÂÂ 
When youÂve got a gun to your face, itÂs hard.

Â 

Q.Â Â Â Â Â  Are you still working there at the A-1?

Â 

A.Â Â Â Â Â  Yes, I am.

Â 

Q.Â Â Â Â Â  How do you feel now working there after
August 18?Â  Is it any different from the
way you felt before August 18?

Â 

A.Â Â Â Â Â  Yes, sir, it is.

Â 

[DEFENSE
ATTORNEY]Â Â  Judge, IÂm going to object to
relevance.

Â 

THE COURT:Â Â Â Â Â Â Â Â  Overruled.

Â 

Q.Â Â Â Â Â  Describe that feeling that you have now
that you did not have prior to your encounter with those four individuals who
robbed you?

Â 

[DEFENSE ATTORNEY]Â Â  Judge, I am going to again object to
relevance and would ask for a running objection.

Â 

THE COURT:Â Â Â Â Â Â Â Â  Running objection is noted, same is
overruled.

Â 

A.Â Â Â Â Â  Do I answer it?

Â 

Q.Â Â Â Â Â  Yes.

Â 

A.Â Â Â Â Â  Well, now I am more cautious who comes
in.Â  I watch more.Â  I stay more around the register.Â  I donÂt go to my cooler hardly at all once
night comes.Â  I wait until - - I lock the
doors before I do anything, because IÂm really afraid.Â  ItÂs a bad feeling when you see somebody walk
up while IÂm doing something or turn around and somebody is there.Â  It just startles me, you know.Â  I think itÂs somebody else trying to come in
and do the same thing.Â  ItÂs just not the
same.

Â 

Relying on Stavinoha
v. State, McClenton urges that this testimony was irrelevant and
inadmissible and that the trial court abused its discretion in overruling his
objections and admitting the testimony.[2]Â  See Stavinoha
v. State, 808 S.W.2d 76, 78 (Tex. Crim. App. 1991) (citing Miller-El v. State, 782 S.W.2d 892, 895
(Tex. Crim. App. 1990)).Â  The crimeÂs
after-effects on the victim is not relevant at the guilt-innocence phase.Â  Garrett
v. State, 815 S.W.2d 333, 337-38 (Tex. App.ÂHouston [1st Dist.] 1991, pet. refÂd)
(citing Miller-El).

We agree with McClenton (and with the StateÂs
concession)[3]
that KempenskiÂs testimony about how she felt after the robbery was irrelevant
and that the trial court abused its discretion in overruling McClentonÂs
relevance objections and admitting this testimony.

Having found error, we must conduct a harm
analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure, which
provides that a nonconstitutional error Âthat does not affect substantial
rights must be disregarded.ÂÂ  Tex. R. App. P. 44.2(b); see Motilla v. State, 78 S.W.3d 352, 355
(Tex. Crim. App. 2002).Â  While we consider
the harm, if any, caused by the admission of the testimony, we will disregard
any error that does not affect a substantial right of the defendant.Â  Id.;
Haynes v. State, 85 S.W.3d 855, 859
n.4 (Tex. App.ÂWaco 2002, pet. ref'd).Â 
"A substantial right is affected when the error had a substantial
and injurious effect or influence in determining the jury's verdict."Â  King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557
(1946)).Â  We do not reverse if,
"after examining the record as [a] whole, [we have] fair assurance that
the error did not influence the jury, or had but a slight effect."Â  Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); see also Schutz v. State,
63 S.W.3d 442, 444 (Tex. Crim. App. 2001).Â 
The reviewing court should consider everything in the record, including
all the evidence admitted, the arguments, and voir dire.Â  Motilla,
78 S.W.3d at 355-57.Â  The strength of the
evidence of guilt, especially if it is overwhelming, is a factor to be
considered.Â  Id. at 356-58; Haynes,
85 S.W.3d at 859 n.4.Â  However, if we
have "grave doubt" about whether the error did not affect the
outcome, then the error is treated as if it did affect the outcome.Â  Thomas
v. State, 137 S.W.3d 792, 796 (Tex. App.ÂWaco 2004, no pet.) (citing Fowler v. State, 958 S.W.2d 853, 865
(Tex. App.ÂWaco 1997), aff'd, 991
S.W.2d 258 (Tex. Crim. App. 1999)).

Â Â Â Â Â Â Â Â Â  After
examining the evidence as a whole, we conclude that the admission of the testimony
had no effect on the jury.Â  Johnson, 967 S.W.2d at 417; Castillo, 910 S.W.2d at 127-28; Garcia, 827 S.W.2d at 30.Â  The record includes McClentonÂs recorded
statement in which he admitted to committing the robbery and holding the
gun.Â  This, along with the other
testimony linking McClenton to the crime, is more than enough evidence of guilt
to render the erroneous admission of the testimony harmless.Â  See Motilla,
78 S.W.3d at 357-58.Â  While the State did
mention during closing argument the fear that a person would have while being
robbed at gunpoint by four masked people, it was not a reference to the
victimÂs irrelevant after-effects testimony, but was in response to the
defenseÂs closing argument in which the victimÂs credibility was attacked over her
description of the robber who Âscared the hell out of her with a gun.Â

We cannot say that we have "grave
doubt" about whether the error affected the outcome. Â Thomas, 137 S.W.3d at
796.Â  Given the strength of the evidence
of guilt, we find the erroneous admission of the testimony harmless.Â  Motilla,
78 S.W.3d at 357-58; cf. Garrett, 815 S.W.2d at 338.Â  Accordingly, we overrule McClentonÂs second issue.

Confrontation-Clause
Violation

Â Â Â Â Â Â Â Â Â  McClenton
asserts in a third issue that the trial court erred in admitting hearsay
testimony by Officer Jerry Stover relating to statements made to Stover by two
of McClentonÂs codefendants and accomplices, Charlie Smith and Patrick
Johnson.Â  McClenton alleges that this hearsay
testimony violated his Confrontation-Clause rights under the Sixth Amendment.

The Sixth
Amendment to the United States Constitution provides that "[i]n all
criminal prosecutions, the accused shall enjoy the right to . . . be confronted
with the witnesses against him."Â  U.S. Const. amend. VI.Â  The Confrontation ClauseÂs central concern is
to ensure the reliability of the evidence against a criminal defendant by
subjecting it to rigorous testing in the context of an adversarial proceeding
before the trier of fact.Â  Lilly v.
Virginia, 527 U.S. 116, 123-24,
119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999).Â 
The United States Supreme Court recently held that testimonial
statements of witnesses absent from trial are admissible over a Sixth Amendment
Confrontation Clause objection only where the declarant is unavailable and only
where the defendant has had a prior opportunity to cross-examine.Â  Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct.
1354, 1368-69, 158 L.Ed.2d. 177 (2004).Â 
The Sixth Amendment right of confrontation is a fundamental right and is
applicable to the states by virtue of the Fourteenth Amendment.Â  Shelby v. State, 819 S.W.2d 544, 546
(Tex. Crim. App. 1991) (citing Pointer v. Texas, 380 U.S. 400, 403, 85
S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)).Â 
We review de novo the trial court's ruling that the admission of
StoverÂs testimony did not violate McClentonÂs Confrontation-Clause
rights.Â  Lilly, 527 U.S. at 136-37, 119
S.Ct. at 1900.

Statements taken
by police officers in the course of interrogations are testimonial.Â  Crawford, 541 U.S. at 52, 124
S.Ct. at 1364.Â  Stover investigated the aggravated robbery of the
A-1 Drive In.Â  In addition to obtaining
two recorded statements from McClenton, he obtained recorded statements from
Smith and Johnson, both of whom implicated themselves and McClenton in the
robbery.Â  Under Crawford, the recorded
statements of Smith and Johnson made to police during custodial interrogation
constitute testimonial evidence.Â  Id.Â  The
State agrees that their statements are ÂtestimonialÂ and that Crawford applies, but it argues that
McClenton Âopened the doorÂ by first asking Stover on cross-examination about
SmithÂs statement:

Q.Â Â Â Â Â  You actually had an opportunity to talk to
Charlie Smith in the Brazos County Jail?

Â 

A.Â Â Â Â Â  Yes,
sir.

Â 

. . .

Â 

Q.Â Â Â Â Â  You
talked to him there in the Brazos County Jail about the circumstances
surrounding this case, is that correct?

Â 

A.Â Â Â Â Â  Yes,
sir.

Â 

Q.Â Â Â Â Â  And
that was your intent to do so?

Â 

A.Â Â Â Â Â  Yes,
sir.

Â 

Q.Â Â Â Â Â  And
in your conversations with Mr. Smith, did he indicate that someone other than
Darrell McClenton was wielding the pistol?

Â 

A.Â Â Â Â Â  Yes,
sir.

Â 

Q.Â Â Â Â Â  In
fact, he indicated that someone other than Darrell McClenton was actually the
first one into the store, correct?

Â 

A.Â Â Â Â Â  This
is Mr. SmithÂs testimony?

Â 

Q.Â Â Â Â Â  Yes,
sir.

Â 

A.Â Â Â Â Â  Yes,
sir.

Â 

Â Â Â Â Â Â Â Â Â  On
redirect examination, the State asked Stover more questions about SmithÂs statement, but it also began
asking questions about JohnsonÂs
statement, about which McClenton had not cross-examined Stover.Â  Over McClentonÂs hearsay and Confrontation-Clause
objections and his assertion that he had not opened the door as to JohnsonÂs
statement, the trial court allowed Stover to testify that Johnson said in his
statement that McClenton held the gun in the robbery (which McClenton admitted
in his own statement), that Smith was the driver, and that they had gone to a
Bremond housing complex before the robbery (which McClenton denied in his
statement).

Â Â Â Â Â Â Â Â Â  Otherwise
inadmissible evidence may be admitted if the party against whom the evidence is
offered Âopens the door,Â but the party offering the evidence may not Âstray
beyond the scope of the invitation.ÂÂ  Schutz v. State, 957 S.W.2d 52, 71 (Tex.
Crim. App. 1997) (quoting Bush v. State,
773 S.W.2d 297, 301 (Tex. Crim. App. 1989)); see Clay v. State, 102 S.W.3d 794, 797 (Tex. App.ÂTexarkana 2003,
no pet.); Bell v. State, 867 S.W.2d
958, 962 (Tex. App.ÂWaco 1994, no pet.).Â 
It is not error to admit hearsay evidence in a criminal case over
objection when it goes to clarify other hearsay evidence elicited by the
opposition.Â  Bunton v. State, 136 S.W.3d 355, 367 (Tex. App.ÂAustin 2004, pet. refÂd).

Â Â Â Â Â Â Â Â Â  We
conclude that McClenton Âopened the doorÂ as to SmithÂs statement and the trial
court properly allowed the State to question Stover about SmithÂs statement,
but the court allowed the State to Âstray beyond the scope of the invitationÂ by
eliciting testimony from Stover about JohnsonÂs
statement, over McClentonÂs objections.Â  McClenton did
not have a prior opportunity to cross-examine Johnson about his statement, and it
is not disputed that Johnson, who was awaiting trial on the same charge, was
unavailable.Â  The admission of a
testimonial statement by an accomplice or codefendant as evidence of guilt of
the defendant on trial, absent opportunity by the defendant to cross-examine
the declarant, is "sufficient to make out a violation of the Sixth
Amendment."Â  Crawford, 541 U.S. at 68, 124
S.Ct. at 1374.Â  Thus, the trial court's
ruling on the admissibility of StoverÂs testimony as to JohnsonÂs statement violated
McClentonÂs Sixth Amendment Confrontation Clause rights.Â  StoverÂs testimony about JohnsonÂs statement was
not admissible against McClenton, and the trial court erred in ruling
otherwise.Â  See id.

Because
a violation of the Sixth Amendment right of confrontation constitutes
constitutional error, we must reverse a trial court's judgment when
Confrontation-Clause error is present unless we can determine beyond a
reasonable doubt that the error did not contribute to the conviction.Â  See Tex.
R. App. P. 44.2(a) (requiring reversal of constitutional error unless
the appellate court determines beyond a reasonable doubt that the error did not
contribute to the conviction or punishment); see Wall v. State, 143 S.W.3d 846, 851-52 (Tex. App.ÂCorpus Christi
2004, no pet. h.); Hale v. State, 139
S.W.3d 418, 422 (Tex. App.ÂFort Worth 2004, no pet. h.).

In
determining harm from Confrontation-Clause error, we are to apply the factors
enunciated in Delaware v. Van Arsdall. Â See Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct.
1431, 89 L.Ed.2d 674 (1986); Shelby, 819 S.W.2d at
547, 550-51.Â  The Van Arsdall harm
factors are the importance of the witness's testimony; whether the testimony
was cumulative; the presence or absence of evidence corroborating or
contradicting material points of the witness's testimony; the extent
cross-examination was permitted; and the overall strength of the State's
case.Â  Van Arsdall, 475 U.S. at 684, 106
S.Ct. at 1438.Â  If, applying these
factors, we cannot determine beyond a reasonable doubt that the Confrontation
Clause violation did not contribute to the appellant's conviction or
punishment, we must reverse the trial court's judgment.Â  Tex.
R. App. P. 44.2(a); Shelby, 819 S.W.2d at 546-47.Â  In
making this determination, we do not focus on the propriety of the trial's
outcome but on calculating, as nearly as possible, the probable impact of the
error on the jury in light of the other evidence. Â Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); Bratton
v. State, 156 S.W.3d 689, 693 (Tex. App.ÂDallas 2005, no pet. h.). Â In other words, the question is not whether
the legally admitted evidence is sufficient to support the conviction. Â McCarthy v. State, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001)
(quoting Satterwhite v. Texas, 486
U.S. 249, 258-59, 108
S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988)).Â  Rather, the question is whether the
complained-of statement contributed to the jury's verdict, regardless of the
sufficiency of the evidence, independent of the statement, to sustain the
conviction. Â Id. Â Asked in
another way, the question is whether a reasonable probability exists that the
error moved the jury from a state of nonpersuasion to one of persuasion as to
the issue in question. Â Wesbrook, 29 S.W.3d at 119; Bratton, 156 S.W.3d
at 693.

McClenton was convicted of
aggravated robbery. Â He admitted to the
offense and to pointing the gun at Kempenski, the store clerk, in two separate
recorded statements with Stover.Â  A
witness who lived in Bremond near the store testified that earlier on the
evening of the robbery, McClenton (whom she identified in court) and three
other black males were in a car that drove up to her and asked her what time
the store closed.Â  Another local witness testified
and corroborated the testimony regarding descriptions of the car, the four men,
and that they asked what time the store closed.Â 
Their descriptions of the four men were consistent with KempenskiÂs
descriptions.

In his first recorded statement, McClenton
identified three accomplices in the robbery and provided details of it,
including that he pointed a loaded gun at the store clerk.Â  When McClenton was later confronted by Stover
that one of the alleged accomplices could not have participated in the robbery
because he was in prison, McClenton gave a second recorded statement in which
he changed the names of two accomplices and asserted that the gun was not
loaded.

StoverÂs testimony about JohnsonÂs statement was
largely cumulative of lawfully admitted evidence.Â  There was adequate evidence corroborating
McClentonÂs and SmithÂs recorded statements confessing to the robbery.Â  One of the witnesses previously knew and
identified McClenton as being in Bremond that evening with three other black
males and asking her what time the store closed, and a second witness gave
similar testimony.Â  On the day after the
robbery, after hearing about it, one of the witnesses went to the store and
told the owner about seeing and talking to McClenton the night before, and she
later told Stover the same information.Â  And
given McClentonÂs two recorded statements confessing to the robbery, the State
overall had a strong case.Â  Disregarding
StoverÂs testimony about JohnsonÂs statement, the lawfully admitted evidence
overwhelmingly proved McClentonÂs guilt.Â 
See Wall, 143 S.W.3d at 852. Â Given this caseÂs record, which we have
carefully reviewed, we conclude beyond a reasonable doubt that the admission of
StoverÂs testimony about JohnsonÂs statement did not contribute to McClentonÂs
conviction or punishment.Â  See Bratton, 156 S.W.3d at 694-95.Â  Accordingly, we hold that the trial courtÂs
error was not harmful and thus overrule McClentonÂs third issue.

Impermissibly
Suggestive Photo Line-Up

Â Â Â Â Â Â Â Â Â  In
his fourth issue, McClenton says the trial court erred in the punishment phase
by admitting an allegedly tainted photo line-up conducted in connection with an
extraneous offense (aggravated robbery) allegedly committed by McClenton.

An in-court
identification is inadmissible if tainted by an unduly suggestive pretrial
identification.Â  See Loserth v. State,
963 S.W.2d 770, 771 (Tex. Crim. App. 1998).Â 
In determining whether the trial court erred in admitting an in-court
identification, we employ a two-step analysis, inquiring:Â  (1) if the pretrial procedure was
impermissibly suggestive; and (2) if so, whether the impermissibly suggestive
pretrial procedure gave rise to a very substantial likelihood of irreparable
misidentification at trial.Â  See
Ibarra v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999); Delk v.
State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993).Â  It is the risk of in-court misidentification
that taints the identification.Â  See
Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).Â  The defendant has the burden to show by clear
and convincing evidence that the in-court identification is unreliable.Â  See Delk, 855 S.W.2d at 706.Â  The admissibility of an identification is a
mixed question of law and fact that we review de novo.Â  See Loserth, 963 S.W.2d at 773.

Â Â Â Â Â Â Â Â Â  In the first step, we evaluate the
pretrial photo line-up itself to determine whether it was impermissibly or
unduly suggestive.Â  ÂA lineup is
considered unduly suggestive if other participants are greatly dissimilar in
appearance from the suspect.ÂÂ  Withers
v. State, 902 S.W.2d 122, 125 (Tex. App.ÂHouston [1st Dist.] 1995, pet.
ref'd) (citing United States v. Wade, 388 U.S. 218, 232-233, 87 S.Ct.
1926, 1935, 18 L.Ed.2d 1149 (1967)).Â  A
suspect may be greatly dissimilar in appearance from the other participants
because of his distinctly different appearance, race, hair color, height, or
age.Â  See id. (citing Foster v.
California, 394 U.S. 440, 442-43, 89
S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969)).Â 
But minor discrepancies between line-up participants do not render a
line-up impermissibly suggestive.Â  See
id. (citing Partin v. State, 635 S.W.2d 923, 926 (Tex. App.ÂFort Worth
1982, pet. ref'd)).Â  The line-up
participants need not be identical to satisfy due process requirements.Â  See Buxton v. State, 699 S.W.2d 212,
216 (Tex. Crim. App. 1985).

Â Â Â Â Â Â Â Â Â  McClenton asserts that his photograph
in the photo line-up was overly different in characteristics from the other
five photographs because the height line of two photographs was not Âeven
closeÂ to the others and the other individual closest in weight to McClenton
was 18 pounds heavier than him.

Â Â Â Â Â Â Â Â Â  The
extraneous-offense aggravated robbery was investigated by Sergeant Vince Angele
of the Hearne Police Department, who generated photo line-ups from descriptions
that he obtained from the three complainants (one who was struck on the head
with a gun butt and one who was shot in the buttocks).Â  He prepared the photo line-ups using a
computer program that generates random photographs based on parameters defined
by the user.

We have reviewed the photo line-up that
McClenton complains of, and we find that none of the other photographed participants
are dissimilar in appearance from McClenton.Â 
The six color photographs depict six black males of generally the same
age, weight, height, and appearance.Â  The
height difference between the tallest and shortest is only four inches, and the
height differences are not even readily apparent because of various, slight
differences in distances between the camera and the subjects.Â  And because all the photographs depict the
subjects from the top of the shoulders and up, the various weight differences
are not noticeable.Â  We conclude that the
photo line-up is not impermissibly suggestive.

Â Â Â Â Â Â Â Â Â  McClenton
also claims that the trial court erred by letting Sergeant Angele and the three
alleged victims testify about their prior photo line-up identification of McClenton,
by admitting the photo line-ups that all three used, and by then allowing all
three to identify McClenton in the courtroom.Â 
McClenton asserts that this amounted to Âimpermissible bolstering.ÂÂ  But because McClenton did not object on this
ground in the trial court and cites no authority in his brief, this complaint has
not been preserved and also has not been adequately briefed, presenting nothing
for review.Â  Tex. R. App. P. 33.1(a), 38.1(h); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000); Walder v.
State, 85 S.W.3d 824 (Tex. App.ÂWaco 2002, order).Â  We overrule McClentonÂs fourth issue.

Punishment
Charge Error

Â Â Â Â Â Â Â Â Â  McClentonÂs
final issue points to Huizar v. State to
show that the trial court erred in the punishment-phase charge by not including
a reasonable-doubt instruction on the extraneous-offense evidence admitted
during the punishment phase.Â  See Huizar v. State, 12 S.W.3d 479, 484
(Tex. Crim. App. 2000).Â  The State concedes error but notes that
McClentonÂs trial counsel did not object to this charge error, which his
appellate counsel concedes.

Â Â Â Â Â Â Â Â Â  An
unpreserved complaint about a charge error in a criminal case is reviewed for
Âegregious harm.Â Â Huizar, 12 S.W.3d at 484-85; Almanza
v. State, 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1985).Â  Errors that result in egregious harm are
those that affect Âthe very basis of the case,Â deprive the defendant of a
Âvaluable right,Â or Âvitally affect a defensive theory.ÂÂ  Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing Almanza, 686 S.W.2d at 172).Â 
In deciding whether egregious harm exists, we look at (1) the charge
itself, (2) the state of the evidence, including contested issues, (3) the
arguments of counsel, and (4) any other relevant information revealed by the
record of the trial as a whole.Â  Id. Â In
asserting egregious harm, McClenton focuses on the unadjudicated aggravated
robbery that we addressed in McClentonÂs fourth issue.

McClentonÂs trial began on February
 18, 2004, and the jury
found him guilty that day.Â  The
guilt-innocence charge did contain a reasonable-doubt instruction for
extraneous offenses.Â  The punishment
phase began immediately but was not completed until the next day. Â The State stipulated that McClenton was
eligible for community supervision.Â  With
a punishment range of 5 to 99 years for aggravated robbery, he received a
24-year sentence.

In his closing, McClentonÂs trial attorney
argued to the jury that for them to consider the unadjudicated aggravated
robbery, they had to believe that it was McClenton who committed that offense
Âbeyond a reasonable doubt,Â and he then mentioned twice more Âbeyond a
reasonable doubt.Â

In both phases of the trial there was no mention
of any burden of proof other than Âbeyond a reasonable doubt.ÂÂ  McClenton does not argue on appeal that the
evidence was insufficient to prove beyond a reasonable doubt that he committed
the unadjudicated aggravated robbery, for which he attacked the credibility of
the three complainants because of minor discrepancies, their prior drug use,
and because they changed their story because the alleged robbery occurred
during a drug buy that they did not initially reveal to law enforcement.

Having viewed the entire record, we do not find
that Âthe very basis of the caseÂ was affected or that McClenton was deprived
of a Âvaluable rightÂ as a result of the omitted reasonable-doubt instruction
in the trial courtÂs punishment charge.Â 
McClentonÂs fifth issue is overruled.

Conclusion

Â Â Â Â Â Â Â Â Â  Having
overruled all of McClentonÂs issues, we affirm the trial courtÂs judgment.

Â 

BILL VANCE

Justice

Â 

Before Chief
Justice Gray,

Justice Vance,
and

Justice Reyna

Affirmed

Opinion
delivered and filed April 20, 2005

Publish

[CRPM]











Â Â Â  [1]Â Â Â Â Â Â  See
also Atnip v. State, 1998 WL 393970 (Tex. App.ÂAustin 1998, no pet.) (not
designated for publication) (holding that where defense attorney knew tape
existed and State asserted that tape was available and defense could have obtained
it any time, tape was made available and State did not have to deliver it); Riley v. State, 1997 WL 466555 (Tex.
App.ÂHouston [1st Dist.] 1997, no pet.) (not designated for publication)
(holding that where defense counsel had transcript and incomplete copy of
recorded statement and thus was on notice of existence and content of statement
several months before trial, defendant had been ÂprovidedÂ with statement).





Â Â Â  [2]Â Â Â Â Â Â  We review a trial court's decision to
admit evidence for an abuse of discretion.Â 
Chamberlain v. State, 998
S.W.2d 230, 237 (Tex. Crim. App. 1999); Gipson
v. State, 82 S.W.3d 715, 721 (Tex. App.ÂWaco 2002, no pet.).

Â 





Â Â Â  [3]Â Â Â Â Â Â  In its brief, the State Âconcedes that
this question did elicit testimony from the victim regarding the after-effects
of AppellantÂs crimeÂ and that Âvictim impact testimony is, as a general rule
and in and of itself, irrelevant to the issue of AppellantÂs guilt and is more
commonly viewed as a proper consideration during the punishment phase of the
trial.Â