Affirmed and Memorandum Opinion filed September 8, 2005









Affirmed and Memorandum Opinion filed September 8,
2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00185-CR

____________

 

LAURIE LEE SALLEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 212th
District Court

Galveston County, Texas

Trial Court Cause No. 02CR1306

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Laurie Lee Salley, appeals her
conviction for sexual assault of a child, and ten-year probated sentence and
$10,000 fine.  In this appeal, appellant
complains the trial court erred in failing to instruct the jury that the
charged conduct must be voluntary in order to convict, and the evidence is
legally and factually insufficient to support her conviction.  We affirm.








                                                  Background

In May 2002,
appellant had known the complainant, J.K., for over a year.  She first met Roseanne Kilman, the mother of
the complainant, early in 2001, and she lived with the Kilmans for about three
weeks.  

On the evening of May 14, 2002, several
people were at Michele Smart=s house,
including, J.K., who was 16 years old, J.K.=s brother, Eric
Kilman, appellant, who was 35 years old, and appellant=s friend,
Tammy.  Appellant, J.K., Eric, and Tammy
spent the night at Michele=s house.  

Michele testified that when she went to
bed at 11:30 p.m in her bedroom, J. K. and Eric were in the living room, and
she assumed appellant was in her daughter=s bedroom.[1]  Michele woke up around 2:00 a.m., and went to
the kitchen to get something to drink. 
On her way to kitchen, she noticed the door to her office was closed and
the light was on underneath it.  She
heard sexual activity coming from the office. 
Michele found the door locked when she tried to open it.  She went to the living room, but did not see
J. K. there, and she did not see appellant in her daughter=s bedroom.  She woke up Eric, who was in the living room,
and spoke to him.  Michele then went to
the kitchen to get a knife so she could jimmy open the door to her office. 

When Michele returned to her office, she
found the door was cracked open and saw J. K. sitting at the computer and
appellant laying on the couch with her eyes closed.  Michele told J. K. he needed to go to the
living room and go to bed.  Michele did
not speak to appellant who appeared to be asleep, although she did not believe
appellant was asleep.  Michele never
mentioned the incident to appellant. 
When Michele had seen appellant earlier in the evening, she did not
appear to be unconscious, but alert and awake. 









Michele spoke to Eric, who was 18, about
what she had heard in her office.  After
speaking with Eric, she spoke to J.K.=s mother, Roseanne
Kilman, about the incident and warned Kilman that if she did not report it to
the police, she would.  Mrs. Kilman
reported it.  

J.K. testified about what occurred between
him and appellant.  J.K. had gone into
the office to play solitaire on the computer. 
Appellant, who was laying on the couch in the office, called him over to
her.  J.K. went over to appellant and
they started kissing.  Appellant told
J.K. to close and lock the door.  They
started kissing again and took off their clothes.  J.K. testified that they had sexual
intercourse, which lasted for an hour to an hour and a half.  J.K. testified that his penis penetrated her
vagina.  Furthermore, according to J.K.,
appellant was a willing participant, awake, and alert.  

J.K. testified that he heard Michele in
the hallway and told appellant they were going to have to stop so they did not
get caught.  Appellant dressed quickly
and laid down on the couch and covered up. 
J.K. opened the door and went to the computer to play solitaire.  Michele walked by and asked why the door was
shut; J.K. responded that he did not know. 
Appellant told him not to say anything because she did not want to go to
jail.  

Appellant also testified about what
occurred on May 14, 2002.  Appellant
stated that while J.K. and Eric watched television in the living room, she,
Tammy, and Michele sat outside where they drank beer and smoked marijuana.  At 2:30, appellant and Tammy went inside and
laid on the couch with their heads at opposite ends.  Eric was in the recliner and J.K. was laying
on the floor in front of the television. 
Appellant, who was intoxicated, could not sleep and went to the office
to write a letter on the computer to her boyfriend.  Appellant finally gave up on writing the
letter.  He then laid down on the couch
in the office and went to sleep.








Appellant testified that she woke up
because there was someone kissing her with a hand inside her sweat pants.  At first she was very groggy, but then she
realized it was J.K..  As appellant tried
to move, she wound up on the floor.  J.K.
pulled her sweat pants off, and was laying between her legs, trying to put his
penis into her vagina.  J.K.=s penis was at the
entrance of her vagina, not inside her. 
Appellant denied that there was any penetration.  J.K. was trying to get inside her, but she
sat up and pushed him off of her and told him to stop.  Appellant put her sweat pants back on and
told J.K. she was going back to sleep because she had to go to work later that
day.  When J.K. asked if he could play on
the computer, appellant said she did not care. 
Appellant claims she did not hear anyone outside the door and Michele
did not say anything to her about what had occurred.  

J.K. also testified that he and appellant
had engaged previously in sexual intercourse a few days earlier on May 10,
2002.  J.K. spent the night at the
apartment of a family friendCBennie Zinglemann,
whom he had known since he was little. 
At that time, appellant was living with Bennie.  Bennie slept in her bedroom, while he and
appellant both were to sleep in the living roomCJ.K. on the couch
and appellant on a mattress on the floor. 
According to J.K., when appellant got up to get a beer, she asked him if
wanted one and he said yes.  When
appellant bent down to give him the beer, she kissed him.  J.K. laid down on the mattress with appellant
and they started kissing.  J.K. testified
that they engaged in sexual intercourse and his penis penetrated her
vagina.  J.K. further stated that
appellant, who was awake and alert, and not unconscious, told him not to tell
anyone because she could get into trouble. 


Bennie testified that when she went to bed
around 10:00 or 10:30 p.m., J.K. was laying on the couch and appellant was
laying on the mattress in the living room. 
When Bennie got up later and went to the kitchen, she saw J.K. and
appellant laying on the mattress in the living room.  When appellant came into the kitchen, Bennie
asked her why J.K. was laying on her bed. 
Appellant said J.K. was cold. 
When Bennie asked appellant why she did not get J.K. a blanket,
appellant said the extra blankets were in the closet in the bedroom, and she
did not want to disturb her.  Bennie told
appellant that J.K. needed to get back on the couch.  Bennie testified that when she was talking to
appellant in the kitchen, appellant was alert and conscious, not
intoxicated.  








Appellant testified that she and J.K.
watched movies at Bennie=s apartment.  When Bennie asked her why J.K. was laying
down, she said there was not a spare blanket. 
Appellant denied that there was any sexual touching or relationship on
May 10.  

                                  Instruction on Voluntariness

In her first issue, appellant complains the
trial court did not instruct the jury that in order to convict her, it had to
find beyond a reasonable doubt that she engaged in a voluntary act.  Appellant asserts she did not engage in a
voluntary act to cause the penetration, but was a passive recipient in a brief
sexual encounter initiated by J.K..  

A person commits the offense of sexual assault of a child
if the person 

causes the sexual organ of a child to contact or penetrate
the mouth, anus, or sexual organ of another person, including the actor.  

Tex. Pen. Code
Ann. ' 22.011(a)(2)(C) (Vernon Supp. 2004B05).  

With respect to the voluntariness of the actor=s conduct, Section
6.01(a) of the Texas Penal Code provides:

A person commits an offense only if he voluntarily engages
in conduct, including an act, an omission, or possession.

Tex. Pen. Code
Ann. ' 6.01(a) (Vernon 2003).  

Under section 6.01(a), voluntariness
refers only to one=s own physical body movements.  Rogers v. State, 105 S.W.3d 630, 638
(Tex. Crim. App. 2003).  AIf those physical
movements are the nonvolitional result of someone else=s act, are set in
motion by some independent non-human force, are caused by a physical reflex or
convulsion, or are the product of unconsciousness, hypnosis or other
nonvolitional impetus, that movement is not voluntary.@  Id. 
The accused=s testimony may raise issues of
sufficiency regarding a required charge on voluntariness.  Brown v. State, 955 S.W.2d 276, 279
(Tex. Crim. App. 1997).  








However, the evidence raises an issue of
voluntariness only if the accused admits that she committed the charged offense
and the defense will absolve her from criminal responsibility for engaging in
the conduct.  Bell v. State, 867
S.W.2d 958, 962 (Tex. App.CWaco 1994, no
pet.); Vollbaum v. State, 833 S.W.2d 652, 655 (Tex. App.CWaco 1992, pet.
ref=d).  Thus, if the evidence raises the issue of
voluntariness, the trial court may charge the jury that the defendant should be
acquitted if there is reasonable doubt as to whether she voluntarily engaged in
the conduct of which she is accused.  Brown,
955 S.W.2d at 279 (quoting Williams v. State, 630 S.W.2d 640, 644 (Tex.
Crim. App. 1982)). 

In her written statement to the police, appellant stated A[J.K.] was laying
between my legs with his penis at the entrance of my vagina.  His penis had penetrated at most one inch.@  However, appellant testified at trial, with
regard to the written statement she gave Detective Gates of the Santa Fe Police
Department, that she did not mean that J.K. had penetrated her at all:

Q.      And
did he discuss whether there had been penetration?

A.      Yes. 
That was also a separate conversation after I wrote my statement
out.  I was trying to relay to that there
-- He kept asking me if I felt [J.K.=s] penis at the entrance of my vagina, was there
penetration, and I didn=t know how to indicate that it wasn=t that there was penetration, but
that the head of his penis was pressing against the entrance to my vagina, but
that it was not -- A woman can tell, Mr. Coltzer [defense counsel], when she
has been penetrated.  And we went back
and forth over that and he said if it was pressing against how far, and I didn=t have a ruler.  I didn=t -- You can=t measure, so he asked me to estimate and I did.

                                                    *        *       
*

Q.      And at that point was some statement inter
delineated to the statement?

A.      Yes. 
[Detective Gates] said I needed to quantify how far that pressure, I
guess that=s the word I have been looking for,
that pressure, he asked me to quantify that. 
And so I inserted at most one inch meaning the pressure against, not
penetration inside.

Q.      Was your vagina ever penetrated?

A.      No. 








On cross-examination, appellant further testified with
regard to her written statement:

Q.      At that point he indicated to you that
there was something that you said to him before during the interview that you
had not put in the handwritten statement, is that correct?

A.      No, sir. 
He asked me to clarify my statement as to where exactly [J.K.=s] penis was located at the
entrance of my vagina.

Q.      And at that point, Ms. Salley, you wrote
down eight words in your handwriting and you=re answering his question. 
In fact you wrote his penis had penetrated at most one inch.  Those are your words, not Detective Gates,
correct?

A.      It=s a combination, sir.

                                                    *        *       
*

Q.      What are you trying to say?  His penis did penetrate one inch?

A.      No.  What I was trying to indicate when a man=s penis is at the
entrance to a woman=s vagina pushes the outside lips of her
vagina.  There was no entrance into that
area, and my mistake was the word penetration because we were using that word
but I was -- most of my description was like I=m trying to
describe to you, it was like this.  It
was not like this.

Through her trial testimony, appellant
attempted to repudiate her earlier written statement by claiming that there was
no penetration at all and, therefore, the act did not occur.  Evidence raises an issue of voluntariness
only if the accused admits that she committed the charged offense and the
defense will absolve her from criminal responsibility for engaging in the
conduct.  See Bell, 867 S.W.2d at
962; Vollbaum, 833 S.W.2d at 655. 
Therefore, in light of appellant=s failure to admit
to committing the offense, she was not entitled to an instruction on
voluntariness, and it was not error for the trial court not to include such an
instruction.  Appellant=s first issue is
overruled. 








                              Ineffective Assistance of Counsel

In her second
issue, appellant claims ineffective assistance of trial counsel because her
trial attorney failed to request an instruction that appellant must engage in a
voluntary act to commit a crime.  

Both the United States and Texas
Constitutions guarantee an accused the right to assistance of counsel.  See U.S. Const. amend. VI; Tex.
Const. art. I, ' 10; Tex.
Code Crim.. Proc. Ann. art. 1.05 (Vernon 1977).  The right necessarily includes the right to
reasonably effective assistance of counsel. 
Strickland v. Washington, 466 U.S. 668, 686 (1984).  The United States Supreme Court has
established a two‑prong test to determine whether counsel is
ineffective.  Id.  Appellant must first demonstrate her counsel=s performance was
deficient and not reasonably effective.  Id.
at 688B92.  Thereafter, appellant must demonstrate the
deficient performance prejudiced her defense. 
Id. at 693.  Essentially,
appellant must show that her counsel=s representation
fell below an objective standard of reasonableness, based on prevailing
professional norms, and there is a reasonable probability that, but for her
counsel=s unprofessional
errors, the result of the proceeding would have been different.  Id.; Valencia v. State, 946
S.W.2d 81, 83 (Tex. Crim. App. 1997).

Judicial scrutiny of counsel=s performance must
be highly deferential and we are to indulge the strong presumption that counsel
was effective.  Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
We assume counsel=s actions and decisions were reasonably
professional and that they were motivated by sound trial strategy.  Id. 
Moreover, it is appellant=s burden to rebut
this presumption, by a preponderance of the evidence, via evidence illustrating
why trial counsel did what he did.  Id.  Any allegation of ineffectiveness must be
firmly founded in the record and the record must affirmatively demonstrate the
alleged ineffectiveness.  McFarland v.
State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).








If appellant proves his counsel=s representation
fell below an objective standard of reasonableness, she must still
affirmatively prove prejudice as a result of those acts or omissions.  Strickland, 466 U.S. at 693; McFarland,
928 S.W.2d at 500.  Counsel=s errors, even if
professionally unreasonable, do not warrant setting the conviction aside if the
errors had no effect on the judgment.  Strickland,
466 U.S. at 691.  Appellant must prove
that counsel=s errors, judged by the totality of the
representation, denied her a fair trial. 
McFarland, 928 S.W.2d at 500. 
If appellant fails to make the required showing of either deficient
performance or prejudice, her claim fails. 
Id.  

Because we have determined that appellant
was not entitled to an instruction on voluntariness, we conclude her trial
counsel=s performance was
not deficient for not objecting to the lack of such instruction in the jury
charge.  Appellant=s second issue is
overruled.

                  Legal and Factual Sufficiency of the Evidence

In her third and fourth issues, appellant
challenges the legal and factual sufficiency of the evidence supporting the
determination that she intentionally or knowingly caused the penetration.  When reviewing the legal sufficiency of the
evidence, we must view the evidence in a light most favorable to the verdict
and determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999).  In conducting this review, we do not engage
in a second evaluation of the weight and credibility of the evidence, but only
ensure that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993).  








When reviewing the factual sufficiency of
the evidence, we need answer only one question: 
Considering all of the evidence in a neutral light, was the trier of
fact rationally justified in finding guilt beyond a reasonable doubt?  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  There are two
ways in which the evidence may be insufficient. 
Id.  First, when considered
by itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt. 
Id.  Second, there may be
evidence both supporting, and contrary to, the verdict.  Id. 
Weighing all the evidence under this balancing scale, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard could
not have been met and the guilty verdict should not stand.  Id. at 485.  

Appellant contends that while the evidence
established at most that she participated in the intercourse, it did not
establish that she Acaused@ the penetration
to occur.  Appellant argues that while
J.K. testified that consensual sexual intercourse occurred wherein his penis
penetrated her vagina, he did not testify that she caused the penetration to
occur.  

A[A]lthough the male sex organ must
penetrate the female sex organ in order for sexual intercourse to occur, such
penetration may be initiated and that result caused by action of the female as
well as the male.@  Ex
parte Groves, 571 S.W.2d 888, 892B93 (Tex. Crim.
App. 1978).  Moreover, under Section
6.04(a) of the Texas Penal Code: 

A person is criminally responsible if the result would not
have occurred but for his conduct, operating either alone or concurrently with
another cause, unless the concurrent cause was clearly sufficient to produce
the result and the conduct of the actor clearly insufficient.  

Tex. Pen. Code
Ann. ' 6.04(a) (Vernon 2003).  Therefore, according to the State, it was not
required in the context of this particular crime to show that appellant acted
alone in causing the penetration to occur. 
We agree and find there is sufficient evidence to support beyond a
reasonable doubt the jury=s finding that appellant caused the
penetration to occur.  

J.K. described the incident that occurred
on May 14, 2002.  He testified that
appellant, who was laying on the couch in the office, called him over to her
and they started kissing, eventually took off their clothes, and had sexual
intercourse, in which penetration occurred. 
J.K. also stated that appellant told him to lock the door and not to
tell anyone because she did not want to go to jail.  Michele testified that when she passed by the
office, she heard sexual activity.  J.K.
also testified that earlier in the evening on May 14, 2002, at Michele=s house, his
finger penetrated appellant=s vagina while
they were laying on the couch.  Finally,
J.K. testified about another sexual encounter between him and appellant on May
10, 2002, at Bennie=s apartment, during which there was
penetration.  








Appellant denied that any sexual activity
occurred between her and J.K. on May 14, 2002, or that, at best, J.K. attempted
to engage in sexual intercourse with her while she was asleep.  Appellant similarly claims there was no
sexual activity between her and J.K. on May 10, 2002.  However it is within the province of the
trier-of-fact to resolve any conflicts and inconsistencies in the
evidence.  Heiselbetz v. State,
906 S.W.2d 500, 504 (Tex. Crim. App. 1995). 
Moreover, the trier-of-fact is free to believe or disbelieve part or all
of a witness= testimony.  Jones v. State, 984 S.W.2d 254, 258
(Tex. Crim. App. 1998).  Therefore, the
jury was free to believe J.K.=s version of the
events of May 14, 2002, and reject appellant=s, which
apparently it did.  

When viewed in the light most favorable to
the verdict, we find the evidence supports a determination beyond a reasonable
doubt that appellant caused the penetration to occur.  Moreover, when viewed neutrally, the evidence
is not so obviously weak as to render the verdict clearly wrong or so greatly
outweighed by contrary proof as to indicate manifest injustice.  Appellant=s third and fourth
issues are overruled.  

Accordingly, the judgment of the trial
court is affirmed.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed September 8, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  Michele=s daughter was staying with her father who apparently
did not live with Michele.