IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-11-00027-CR

 

David Sharp,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 40th District
Court

Ellis County, Texas

Trial Court No. 34831CR

 



MEMORANDUM  Opinion



 

The jury
convicted David Sharp of aggravated sexual assault of a child and assessed his
punishment at 99 years confinement.  We affirm.

Background Facts

            Eleven-year-old S.M. was
staying the night at her cousin’s home after babysitting her cousin’s infant
son.  Sharp arrived at the home in the early morning hours, and was also
staying the night.  S.M. testified that she was asleep on the couch and that
she woke up when she felt someone touching her “private.”  S.M. stated Sharp
was the person touching her, and that she got up and moved to another couch. 
Sharp followed her, and he gave her money and told her not to tell anyone. 
S.M. testified that Sharp then pulled down her pants and put his “stuff” inside
of her private.[1] 
S.M. reported the incident to family members who called the police.  S.M. was
taken to the hospital where an examination was performed.

            The examination included
taking samples for a sexual activity kit.  The kit included vaginal and anal
swabs and smears, oral swabs and smears, and also S.M.’s clothing.  The vaginal
and anal swabs tested positive for the presence of seminal fluid.  S.M.’s
underwear also tested positive for the presence of seminal fluid.  The DNA
profile from the evidence matched the DNA profile of Sharp.

            Sharp went to the police
station and gave a statement voluntarily on the day of the incident.  In the
statement, Sharp said that he was asleep on the couch and S.M. climbed on top
of him and straddled him.  Sharp also gave a buccal swab for DNA testing. 
Sharp gave another statement a few days later.  He said that he was asleep on
the couch and he felt something wet.  When he woke up, S.M. was on top of him
on his lap facing backwards.  Sharp pushed S.M. off of him and told her he
would tell her mother.  S.M. responded “so.”  Sharp went back to sleep and was
later woken up by someone hitting him and asking “who had touched this child.” 
Sharp woke up his friend, and they left the home.

            Sharp testified at trial and
repeatedly stated that he did not have the “intent” to commit the offense. 
Sharp testified that S.M. sexually assaulted him.  Sharp’s testimony at trial
was consistent with his statement that he woke up and S.M. was on top of him.
Sharp said that he did not wake up anyone and tell them what had happened
because he did not want them to misunderstand.  Sharp testified that he has
prior arrests, including “four or five resisting and evading arrest.”  He
stated that “any time I’m guilty of something… I run.”

Sharp did not
deny having contact with S.M.  His defense was that she initiated the contact,
and that he had no “intent” to commit the offense.  On the day of trial, the
State informed the trial court that it had just received lab reports on the
biological evidence taken from S.M. and Sharp.  Sharp’s attorney did not seek a
continuance stating that the document “does not affect our defense in anyway. 
It’s expected.”

Admission of Evidence

            In four issues on appeal,
Sharp argues that the trial court erred in admitting evidence.  In the first
issue, Sharp complains that the trial court erred in admitting State’s Exhibit
1, twenty-two dollars in cash.  In the second issue, Sharp argues that the
trial court erred in admitting testimony on the results of DNA testing.  In the
third issue, Sharp contends that the trial court erred in admitting State’s
Exhibits 4, 5, and 6, the buccal swab samples from Sharp.  In the fourth issue,
he complains that the trial court erred in admitting State’s Exhibits 8 through
16, the contents and report from the sexual assault kit containing samples from
S.M.  Sharp argues in each issue that there was no proper foundation and that
the chain of custody was not established.

            We review a trial court's
decision to admit evidence under an abuse of discretion standard.  Davis v.
State, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010); Walters v. State,
247 S.W.3d 204, 217 (Tex. Crim. App. 2007).  The trial court abuses its
discretion only when the decision lies "outside the zone of reasonable
disagreement."  Davis v. State, 329 S.W.3d at 803.

            The requirement of
authentication or identification as a condition precedent to admissibility is
satisfied by evidence sufficient to support a finding that the matter in
question is what the proponent claims.  Tex.
R. Evid. 901 (a).  Without evidence of tampering, most questions
concerning care and custody of a substance go to the weight attached, not the
admissibility, of the evidence.  Lagrone v. State, 942 S.W.2d 602, 617
(Tex. Crim. App. 1997).  The State need only prove the beginning and end of the
chain of custody; it need not show a moment-by-moment account of the
whereabouts of evidence from the instant it is seized.  Shaw v. State,
329 S.W.3d 645, 654 (Tex.App.—Houston [14th Dist.] 2010, pet. den’d).

State’s Exhibit 1

            S.M. testified that Sharp
gave her money and told her not to tell anyone.  S.M. stated that she gave the
money to her aunt, Keidra Perkins.  At trial, Keidra identified State’s Exhibit
1 and stated that S.M. gave her the money.  Officer Chad Bolton testified that
he received State’s Exhibit 1, $22 in cash, from Keidra.  Officer Bolton sealed
the money in an envelope with tape and labeled the envelope with identifying
information.  Officer Bolton placed the evidence in the evidence locker.  It
remained in the evidence locker until the time of trial.  Officer Bolton
identified State’s Exhibit 1 at trial.  Tagging an item of physical evidence at
the time of its seizure and then identifying it at trial based upon the tag is
sufficient for admission barring any showing by the defendant of tampering or
alteration.  Stoker v. State, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989). 
There is no evidence of tampering with State’s Exhibit 1.  The trial court did
not err in admitting the evidence.  We overrule the first issue.

DNA Testimony and State’s Exhibits 8-16

            Dr. Matthew Cox testified
that he examined S.M. and collected specimens and samples from her.  Dr. Cox
submitted each sample and specimen in a standardized kit.  Dr Cox placed the
evidence in a box, sealed the box, and labeled it with identifying
information.  The evidence was placed in a lock box at Parkland Hospital.  The
contents of the kit were marked as State’s Exhibits 8-16, and State’s Exhibit
18.  Dr. Cox identified these exhibits at trial.

            Amanda Lehrmann, a forensic
biologist at Southwestern Institute of Forensic Sciences, testified that the
key to the lock box at Parkland Hospital is kept in the laboratory and accessed
only by biology personnel or direct supervisors.  She testified that evidence
is removed from the lock box three times a week and taken to the laboratory. 
Lehrmann testified that when she received the kit, it was intact and sealed. 
Lehrmann said that SWIF labeled each piece of evidence and sealed the evidence
after testing.  Lehrmann supervised Daniel Tang, who was in training, in
testing the evidence.  Both Lehrmann and Tang signed the report detailing the
evidence and results of the testing. After all testing is complete, the
evidence is sealed and returned to the investigating agency.  Lehrmann
identified the sexual assault kit and the samples contained in the kit at trial
and testified that the evidence had not been tampered with in any way.

            Courtney Ferreira, a
biologist and DNA analyst at SWIF, testified that her department receives the
DNA samples to be tested from the serology department of SWIF.  The samples are
labeled with identifying information for the particular case.  Ferreira
testified that Ismael Parra, who was in training, performed the DNA analysis on
the samples.  Ferriera checked his work and approved his findings.  Both
Ferreira and Parra signed the report containing the results of the DNA
analysis.  Lehrmann, Tang, Ferriera, and Parra all testified at trial
concerning the evidence in question.

            There is no evidence of
tampering with State’s Exhibits 8 through 16 and 18.  The evidence was properly
identified at trial, and the State showed the beginning and the end of the
chain of custody.  The trial court did not err in admitting the evidence.  We
overrule issues two and four.

State’s Exhibits 4, 5, and 6

            State’s Exhibit 4 is a
buccal swab from Sharp’s left cheek, State’s Exhibit 5 is a sample from his
right cheek, and State’s Exhibit 6 is an envelope in which the samples were
placed.  Sergeant Rodney Rickman collected the samples, packaged each sample
separately in an envelope, and labeled and sealed both samples.  Detective Mark
Mahoney took the two envelopes and placed them in a larger envelope, State’s
Exhibit 6.  Detective Mahoney sealed and labeled State’s Exhibit 6 and turned
it over to Lieutenant Ron Roark for delivery to SWIF.

            Lehrmann testified that the
exhibits were received at SWIF and labeled with identifying information.  The
DNA samples were heat sealed and placed in the freezer for DNA testing.

            Officer Rickman identified
the exhibits at trial, and stated that they had not been tampered with in any
way.  The trial court did not err in admitting State’s Exhibits 4, 5, and 6. 
We overrule the third issue.

Conclusion

            We affirm the trial court’s
judgment.

 

 

 

                                                                        AL SCOGGINS

                                                                        Justice

 

Before Chief
Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Affirmed

Opinion
delivered and filed August 31, 2011

Do not publish

[CRPM]

 








 









[1] S.M. identified “stuff” as the male genitalia and sex organ.








sel cannot be faulted for not objecting to its admission. This is no evidence
of ineffective assistance. See Newsome, 703 S.W.2d at 755; Menchaca, 854 S.W.2d at 131. We
overrule point two.
      In his third point Bell argues that the court erred in denying his request for a jury instruction
on voluntary conduct. The Penal Code provides that:
(a) A person commits an offense only if he voluntarily engages in conduct, including an
act, an omission, or possession. 
Tex. Penal Code Ann. § 6.01(a) (Vernon Supp. 1994). By including section 6.01 in the Penal
Code, the Legislature intended to assure that persons not be criminally punished for involuntary
conduct. Vollbaum v. State, 833 S.W.2d 652, 655 (Tex. App.—Waco 1992, pet. ref'd). 
Homicide is punishable only when the conduct is voluntary and the accused has the culpable
mental state. Id.
      Generally, an instruction on voluntariness is necessary only if the defendant admits
committing the act charged and seeks to absolve himself from criminal responsibility for engaging
in the conduct. Id. Thus, we must determine if the defense of "voluntariness" was raised by the
evidence. 
      According to Bell's testimony, he tripped over his blue jeans and fell while holding the rifle
and accidentally shot Larry. However, by the time Bell claimed that he tripped and fell, he had,
according to the medical examiner's testimony, already fatally shot Larry in the head and
abdomen. Moreover, Bell claims that he shot Larry because he was scared and wanted to get his
keys back. Larry had given Bell his keys, yet Bell shot him again, returned to the truck, got his
rifle, and then returned to the garage and shot Larry again with the rifle. Thus, the defense of
voluntariness would not have absolved Bell from criminal responsibility for fatally shooting Larry,
and, therefore, he was not entitled to an instruction on voluntariness. See id. We overrule the
third point and affirm the judgment.


                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 2, 1994
Publish