Vollbaum v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-078-CR

     WILLIAM GLENN VOLLBAUM,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 85th District Court
Brazos County, Texas
Trial Court # 19,485-85
                                                                                                    

O P I N I O N
                                                                                                    

            William Vollbaum was convicted by a jury of involuntary manslaughter and assessed ten
years in prison. See Tex. Penal Code Ann. § 19.05 (Vernon 1989) & § 12.34 (Vernon Supp.
1992). In six points, he asserts that the court erred in allowing a styrofoam model of a woman's
head and diagrams of his hands to be introduced into evidence, in refusing to allow him to testify
about the reason he was seeing a doctor, in denying a mistrial based on improper argument by the
prosecutor, and in the charge. He also asserts that the evidence is insufficient to sustain his
conviction.
      Vollbaum shot his wife, Pamela, after an extended discussion about her relationships prior
to their marriage. He was indicted and tried for murder. At the conclusion of the trial the court
charged the jury on the offenses of murder, involuntary manslaughter, and criminally negligent
homicide. The jury assessed ten years in prison after finding him guilty of involuntary
manslaughter.
VOLUNTARINESS
      Vollbaum's first point is that the court erred in failing to apply the law to the facts on his
voluntariness defense. The court included the following instruction as paragraph XI of the charge:
You are instructed that a person commits an offense only if he voluntarily engages in
conduct, including an act, an omission or possession. Conduct is not rendered [involuntary]
merely because the person did not intend the results of his conduct.
Vollbaum objected that the charge did not apply the law to the facts of the case, and the court
overruled his objection.
      The instruction is a partial instruction on "voluntariness," under section 6.01(a) of the Penal
Code. See id. at § 6.01(a) (Vernon Supp. 1992); Simpkins v. State, 590 S.W.2d 129, 135 (Tex.
Crim. App. 1979). Instructions on "voluntariness" now serve the same function as the former
instruction on accident. Williams v. State, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982) (on
rehearing); Graf v. State, 807 S.W.2d 762, 767 (Tex. App.—Waco 1990, pet. ref'd). By
including section 6.01 in the Penal Code, the Legislature intended to assure that persons not be
criminally punished for involuntary conduct. Dockery v. State, 542 S.W.2d 644, 649 (Tex. Crim.
App. 1976) (on rehearing). Homicide is punishable only when the conduct is voluntary and the
accused has a culpable mental state.


 Id. at 650.
       Generally, an instruction on voluntariness is necessary only if the defendant admits
committing the act charged and seeks to absolve himself from criminal responsibility for engaging
in the conduct. Sanders v. State, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986); Graf, 807 S.W.2d
at 767. Thus, we must determine if the defense of "voluntariness" was raised by the evidence. 
      According to Vollbaum's testimony, he and Pamela spent the evening at home, drinking beer
and listening to music. Throughout the evening, he tried to persuade her to give him more
information about her relationships prior to their marriage. He admitted being "upset" and, at one
point during the evening, broke a wooden kitchen chair by slamming it on the floor. He was
carrying a pistol around the house, using it in an attempt to convince her that she should tell him
about her relationships. Around midnight, they went to a store and purchased more beer. When
they returned home, Vollbaum went to the bedroom, sat on the bed, and loaded the pistol. He
testified:
      Q.  All right, then what happened?
      A.  Then I get up, still talking and stuff to her, and I walk between her and the bed, and I sit
on the corner down here like this kind of facing, like I said, between the door and the
wall.
. . .
      Q.  Where is the pistol at this time?
      A.  Well, I'm still talking to her. I have it in my lap or -- I don't -- being demonstrative
with my hand and stuff.
      Q.  How long did this position go on?
      A.  Not very long.
      Q.  Well, then what happened with the pistol?
      A.  I put it to my head.
. . .
      Q.  All right, then what was your next move?
      A.  I'm still talking to her and telling her -- I don't know exactly what I was telling her, but
telling her stuff that I didn't have reasons to go or what --
      Q.  We'll assume its a stupid argument. Let's go on.
      A.  Yes, sir. And the only other thing I remember, I remember her yelling my name with
a sense of great urgency, and I remember -- the next thing I remember, I was up like this
and the gun goes off. I remember the sound. I remember the smell.
      Q.  Did you see her?
. . .
      A.  I looked around. I didn't see her, and I looked on the floor, and there she was.
      Vollbaum called the police. In the hours following her death, he told one officer that he was
loading the gun when it went off and another officer that he was cleaning the gun. On cross
examination, he testified:
            Q.  Will you agree that you caused the death of Pamela Vollbaum?
            A.  Not intentionally or knowingly, I did not.
            Q.  Will you agree --
            A.  My actions resulted in her death, yes.
Thus, Vollbaum admitted that his conduct resulted in Pamela's death.
      A person may act unintentionally and still commit a criminal offense, provided he acts with
knowledge, recklessness, or criminal negligence. Dockery, 542 S.W.2d at 649. The distinction
to be drawn in determining whether a homicide is punishable as a criminal act is not whether the
act was intentional or unintentional, but whether it was voluntary or involuntary. Tex. Penal
Code Ann. § 6.01(a); Simpkins, 590 S.W.2d at 133.
      Four cases decided by the Court of Criminal Appeals under the 1974 Penal Code demonstrate
the distinction between intentional or unintentional acts on the one hand and voluntary or
involuntary acts on the other.
      In Simpkins v. State the accused presented testimony which, if true, would show that the
shotgun he was carrying accidentally discharged during a struggle with the deceased over the gun. 
Simpkins, 590 S.W.2d at 132. Although the opinion is silent about whether a charge on
voluntariness was given, the Court discussed at length the interaction between the defense of
accident (now voluntariness) and the lesser-included offense of negligent homicide. Id. at 133. 
The court concluded that, although the facts will not ordinarily raise both negligent homicide and
accident, each charge should be given if raised by the evidence. Id.
      In Garcia v. State the defendant testified that the deceased handed him a gun with the hammer
pulled back. Garcia v. State, 605 S.W.2d 565, 566 (Tex. Crim. App. 1980). When he threatened
to throw the gun in a canal, the deceased suddenly grabbed his right elbow with one hand and the
gun with the other hand in an attempt to take the gun away. Id. It discharged. Id. The Court
held that the testimony was sufficient to raise the defense of voluntariness. Id.
      In George v. State the defendant testified that he "stuck [the gun] up in [the deceased's] face,"
that the deceased "turned his face away," and that the gun went off when "the hammer slipped off
my thumb." George v. State, 681 S.W.2d 43, 44 (Tex. Crim. App. 1984). The opinion states:
Where the issue is whether an accused recklessly caused bodily injury by shooting with a gun
and the evidence shows that the accused voluntarily engaged in conduct that includes, inter
alia, one or more voluntary acts leading to the actual shooting, we hold as a matter of law the
fact that when such conduct also includes a bodily movement of the accused sufficient for the
gun to discharge a bullet, without more—such as precipitation by another individual, as in
Garcia and Simpkins, both supra—a jury need not be charged on the matter of whether the
accused voluntarily engaged in the conduct with which he is charged. 

Id. at 47. 
      In Joiner, the defendant pulled a gun, pointed it at the deceased, and, after a shot, exclaimed
"It was an accident." The Court held that the statement, "It was an accident," standing alone, was
insufficient to require a charge on the absence of voluntary conduct. Joiner v. State, 727 S.W.2d
534, 537 (Tex. Crim. App. 1987). The Court noted that "[t]here was no evidence of a scuffle,
of the deceased's striking him or the gun, or of any other movement not willed by [Joiner]." Id.
      We do not believe that Vollbaum's testimony raises the defensive issue of absence of
voluntary conduct. He testified only that Pamela yelled his name with "a sense of great urgency." 
He gave no testimony about any act on her part which might have caused the gun to discharge. 
In fact, he admitted that his conduct caused her death. Thus, we hold that an instruction on
voluntariness was not necessary. See id.; George, 681 S.W.2d at 47.
      We should not be interpreted as approving paragraph XI of the charge given—an abstract
instruction of the law of voluntariness. If the defense is raised by the evidence, a charge on
voluntariness must be given. Garcia, 605 S.W.2d at 566. If it is given, the law must be applied
to the facts. Williams v. State, 622 S.W.2d 578, 579-80 (Tex. Crim. App. 1981).
      We overrule point one.
 
THE STYROFOAM MODEL AS EVIDENCE
      Vollbaum's point three asserts that the court erred in admitting into evidence a styrofoam
model of a woman's head. The exhibit was admitted during the testimony of Dr. Robert Bux, a
medical examiner for Bexar County, who testified for the State. Dr. Bux had examined the gun,
the autopsy report, and x-rays and photographs of Pamela. He also examined three "gun-pattern
tests" prepared by Ronald Dodson, a firearm and tool-mark examiner employed by the Bexar
County Medical Examiner's Office and Regional Crime Lab. Based on his examination of those
items, Dr. Bux testified that in his opinion:
      •    the muzzle of the gun was between twelve and eighteen inches away from Pamela's head
when it fired;
      •    Pamela's hands were not near the muzzle when the gun discharged, because no "powder
tattoo or stipple marks" were on her hands and there were no powder particles or powder
soot visible on her hands; and
      •    Pamela was standing at the foot of the bed when she was shot.
Vollbaum objected to the model on the basis that it represented "an attempt by the State to recreate
[the] scene, which, of course, is not admissible . . . [because] they're using things that their own
expert says is a variable." The court overruled the objection and admitted the model into
evidence.
      Vollbaum urges us to follow the rule of Lopez v. State, 651 S.W.2d 413 (Tex. App.—Fort
Worth 1983), reversed on other grounds, 664 S.W.2d 85 (Tex. Crim. App. 1984) (on rehearing). 
On original submission, the Fort Worth Court of Appeals reversed Lopez's conviction for
aggravated delivery of marihuana because the trial court admitted a videotape recreation of the
offense, based on the premise that jurors' impressions of television images of actors poses too
great a danger of prejudice to be allowed. 
      The Lopez rule is inapplicable here. The model introduced into evidence was not offered as
a re-enactment of the event. Rather, it was offered as a summary of Dr. Bux's testimony, and
Vollbaum only objected that it was an attempt to recreate the scene. See Tex. R. Crim. Evid.
103(a)(1). Visual, real, or demonstrative evidence is admissible if it tends to solve some issue in
and is relevant to the case. Simmons v. State, 622 S.W.2d 111, 113 (Tex. Crim. App. 1981). An
item of demonstrative evidence must be properly identified, i.e., a showing that the matter in
question is what its proponent claims. Id.; Tex. R. Crim. Evid. 901(a). Discretion to admit or
not admit demonstrative evidence must rest in the trial judge. Tex. R. Crim. Evid. 104; Jackson
v. State, 575 S.W.2d 567, 570 (Tex. Crim. App. 1979). Error does not occur unless the court
abuses that discretion. Werner v. State, 711 S.W.2d 639, 643 (Tex. Crim. App. 1986). Because
the court could determine that the model would assist the jury in understanding Dr. Bux's
testimony, we hold that no abuse of discretion occurred when the model was admitted into
evidence. See id. We overrule point three.
VOLLBAUM'S TESTIMONY LIMITED
      In point four, Vollbaum complains of the court's excluding testimony that he offered about
the reasons he saw his family physician after the shooting. During the State's cross-examination
of Vollbaum, the following exchange occurred:
      Q.  And sometime between the morning of April 28th and today, you learned that the
physical evidence just wasn't going to support your story that Pam was four or five feet
away from you when you shot her?
      A.  I didn't know the physical evidence when I first told my psychiatrist and my lawyers.
      Q.  That's the psychiatrist you first went to in August?
      A.  Yes, ma'am.
      Q.  Which is the first time this case was set for trial?
      A.  It doesn't have any bearing on when I went to the psychiatrist. My doctor referred me
to Dr. Williams. My family physician had referred me to him about a month earlier. I
just never went.
      Q.  Let me ask you, Mr. Vollbaum, if you can't remember how Pam was killed, that
essentially leaves this jury with the rest of the evidence, the physical evidence, to have
to make that decision on, doesn't it?
      A.  I guess . . . .
On redirect, Vollbaum's counsel asked him about the reasons he saw his family doctor. Counsel
urged the court to allow the testimony on the basis that the State had "opened the door," but the
court sustained the State's objections that the evidence was "self-serving" and "irrelevant."
      Dr. Milton Williams, a psychiatrist, had testified for the defense that Vollbaum suffered from
a post-traumatic stress syndrome and its symptom "psychogenia amnesia," which might explain
his having given inconsistent accounts of the events immediately afterwards and might have
blocked his ability to recall the events of the actual shooting.
      In a bill of exception, Vollbaum testified that he saw his family physician because of an
inability to sleep, lack of appetite, listlessness and a general feeling of not wanting to do anything. 
He said he "had thoughts of doing things to himself" and, when he moved out of the home where
he and Pamela lived, had a "panic attack." He asserts that this testimony should have been
admitted because the prosecutor had left a false impression that he only went to see the psychiatrist
when his case was set for trial.
      The right of an accused to testify in his own behalf is guaranteed both constitutionally and
statutorily. Rock v. Arkansas, 483 U.S. 44, 52, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987);
Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 1979). Once he chooses to testify, however,
his exercise of the right is not without limitations, but is subject to restrictions that are not
"arbitrary and disproportionate to the purposes they are designed to serve." Rock, 483 U.S. at
56, 107 S.Ct. at 2711; Nelson v. State, 765 S.W.2d 401, 404 (Tex. Crim. App. 1989). Relying
on Rock, Vollbaum asserts that the court improperly limited this right when it would not let him
say why he saw his family doctor. See Rock, 483 U.S. at 55, 107 S.Ct. at 2711.
      Because Vollbaum's answer to the State's question about the physical evidence was
nonresponsive, the State did not "open the door." His testimony was subject to the rules of
evidence. See Tex. R. Crim. Evid. 1101(a); Brumfield v. State, 445 S.W.2d 732, 735 (Tex.
Crim. App. 1969). The court determined that the evidence that Vollbaum offered about the
reasons he visited his family doctor was not relevant. See Tex. R. Crim. Evid. 401. The
determination of whether evidence is relevant to any issue in the case lies within the sound
discretion of the court. Johnson v. State, 698 S.W.2d 154, 160 (Tex. Crim. App. 1985), cert.
denied, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). In reviewing a determination of
relevance, we determine only whether the trial judge abused his discretion, and in this instance,
determine that he did not. See id. We overrule point four.
JURY ARGUMENT
      Vollbaum's point five contends that the court erred in denying a mistrial when the prosecutor
told the jury during arguments at the guilt-innocence stage that criminally negligent homicide is
in "the same category of crime as passing a $200 hot check." Vollbaum's objection to the
statement was sustained, and the jury was instructed to follow the charge and not consider
punishment at that stage of the trial. His motion for a mistrial was denied. Citing McClure v.
State, Vollbaum urges that the mistrial should have been granted. See McClure v. State, 544
S.W.2d 390 (Tex. Crim. App. 1977). 
      Following an objectionable argument, an instruction by the court will normally remove the
taint, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed
by the admonishment. Kinnamon v. State, 791 S.W.2d 84, 89 (Tex. Crim. App. 1990). 
Moreover, for an improper argument to rise to a level mandating reversal, it must be extreme or
manifestly improper, or inject new and harmful facts into evidence. Id. Here, the court gave a
clear and detailed admonishment. Assuming without deciding that the comment was improper,
we do not find that the remark was so inflammatory that the admonishment was ineffective to
remove its prejudicial effect. See id. We overrule point five.
DIAGRAMS
      In his sixth point, Vollbaum complains of the court's allowing diagrams of his hands to be
admitted into evidence, claiming that the exhibits bolstered an officer's testimony. Bryan
Detective Harlan Pope testified that he made a "trace-metal test" on Vollbaum's hands. The test
involves spraying an aerosol-sprayed chemical onto the palms and backs of the hands, allowing
it to dry, then using ultraviolet light to illuminate any traces of metal on the hands. Different
metals are illuminated in different colors. Detective Pope made diagrams of his findings of the
tests on Vollbaum's hands, which the court admitted into evidence over the objection that they
bolstered the officer's testimony. The officer used the diagrams to explain his testimony to the
jury.
      Bolstering occurs when a party uses an item of evidence to add credence or weight to some
earlier unimpeached evidence that the party offered. Pless v. State, 576 S.W.2d 83, 84 (Tex.
Crim App. 1978). The State did not offer the diagrams to add credence to Detective Pope's
testimony—he had not yet given the testimony. Discretion to admit or not admit demonstrative
evidence must rest in the trial judge. Tex. R. Crim. Evid. 104; Jackson, 575 S.W.2d at 570. 
Error does not occur unless the court abuses that discretion. Werner, 711 S.W.2d at 643. 
Because the diagrams would properly aid the jury in understanding Pope's testimony about traces
of metal left on Vollbaum's hands after the shooting, the court did not abuse its discretion in
admitting them. See id.; Tex. R. Crim. Evid. 104. We overrule point six.
SUFFICIENCY OF THE EVIDENCE
      In point two, Vollbaum challenges the sufficiency of the evidence to sustain his conviction of
involuntary manslaughter. The charge offered the jury four choices. It could convict him of
murder if it found that he acted intentionally or knowingly; of involuntary manslaughter if it found
that he acted recklessly; of criminally negligent homicide if it found that he acted with criminal
negligence; or it could acquit him. The jury determined that he recklessly caused Pamela's death
by shooting her in the head.
      Evidence will sustain a conviction if, viewing it in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560
(1979); Geesa v. State, 820 S.W.2d 154, 156-57 (Tex. Crim. App. 1991). Under the Jackson
standard, we do not position ourselves as a thirteenth juror in assessing the evidence; rather, we
position ourselves as a final, due-process safeguard ensuring only the rationality of the factfinder. 
See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We do not make our own
myopic determination of guilt from reading the cold record. See id. We do not disregard, realign,
or weigh evidence. See id. We have only the discretion to determine if any rational trier of fact
could have found, based on the evidence admitted at trial, the essential elements of the offense
beyond a reasonable doubt. See Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App.
1991). 
      Although Vollbaum denied that he intentionally killed Pamela, he admitted that his conduct
resulted in her death. A person can act unintentionally and still commit a criminal offense,
provided he acts with knowledge, recklessness, or criminal negligence. Dockery, 542 S.W.2d at
649. Viewing the entire record in the light most favorable to the verdict finding Vollbaum guilty
of involuntary manslaughter, we find that any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. See Jackson, 443 U.S. at 318-19, 99 S.Ct. at
2788-89, 61 L.Ed.2d 560; Geesa, 820 S.W.2d at 156-57. We overrule point two.
      We affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed June 24, 1992
Publish