Bell v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-140-CR

     EDWARD HAROLD BELL,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 208th District Court
Harris County, Texas
Trial Court # 284,590
                                                                                                    

O P I N I O N
                                                                                                    

      A jury found Edward Harold Bell guilty of murder and assessed punishment at seventy years
confinement. Bell contends in three points that the evidence was legally insufficient to support the
verdict, that he was denied effective assistance of counsel, and that the court erred by failing to
instruct the jury on voluntary conduct. We affirm.
      On the afternoon of August 28, 1978, Dorothy Lang was looking out her kitchen window and
saw Edward Bell park his truck across the street from her house. When he stepped out of the
truck, she saw that he was wearing only a red shirt that came down past his waist but did not cover
his genitals. Lang called the police when she saw Bell approach a group of boys while
masturbating. Larry Dickens, Lang's twenty-six year old son, overheard Lang's call to the police
and ran outside to detain Bell until the police arrived.
      Larry ran to the truck and took the keys from the ignition. Bell began demanding that his
keys be returned to him.
      Lang testified that Bell got his jeans from the truck and put them on. He reached back inside
the truck, produced a gun, and told Larry that he was going to kill him if he did not return his
keys. Bell then fired the gun into the air and threatened to kill Larry if he didn't return the keys. 
Larry replied that Bell was not going to kill anyone and started to approach Bell. According to
Lang, her son walked two or three steps toward Bell when Bell shot him. After Bell shot Larry
five times, Larry staggered to his garage.
      Lang threw the phone down and ran into the garage to let Larry inside the house. Larry was
leaning on the washer and Bell was standing next to Larry holding the gun to Larry's head when
she entered the garage. Lang told Bell that he had better leave because the police were on their
way. He said that he could not go anywhere because Larry had his keys. Lang then told Larry
to give Bell his keys. After Larry gave Bell the keys, he shot Larry again. Lang testified that
Larry did not strike Bell during the confrontation and did not have any weapons. 
      Bell then retreated to his truck and Larry tried to follow him. Lang grabbed Larry from
behind and helped him lie down. Lang then ran inside to call an ambulance.
      Meanwhile, Dawna Dickens Gay, Larry's sister, was returning home when she saw Bell walk
from her garage to his truck, get a rifle, and walk back up her driveway. As Dawna crossed
through the intersection she saw Bell lean over and shoot the gun at something on the ground. As
she got closer, she saw that Larry was lying in the driveway. Bell then ran back to his truck and
left.
      Pasadena police officer Curtis Adams was responding to a call of a person exposing himself
that changed to a shooting with a victim down, when he saw a suspect in a red truck matching the
description he was given over his radio. He turned around and began to chase the truck. Bell
accelerated and turned onto a cul-de-sac where he crossed a yard and stopped the truck at a fence. 
He then began to flee on foot. Adams ordered him to stop and he did.
      An inventory of Bell's truck produced a loaded rifle and a .22 automatic pistol. Adams
testified that Bell was very calm and had no marks on his face. Adams took Bell back to the scene
where Dawna identified him.
      Efforts to resuscitate Larry at the scene were futile. The autopsy showed that Larry had been
shot twice in the head, in both elbows, in the right thigh and in the back. The two head wounds
and the back wound were all fatal. A large caliber lead bullet was recovered from the scalp and
four .22 caliber bullets were recovered. The wound to the left cheek was from close range, nine
to twelve inches away.
      Bell was released on bond, but became a fugitive. On February 14, 1993, after being a
fugitive for fifteen years, Bell was arrested in Panama and extradited to the United States. He was
then tried for Larry Dickens' murder.
      Bell testified on his own behalf. His account of what happened is different from the testimony
of the other witnesses. We will address his version of events under the first point.
      In his first point, Bell argues that the evidence was legally insufficient to sustain the
conviction of murder because the State failed to negate the issue of sudden passion beyond a
reasonable doubt. 
      Bell gave this rendition of what happened on August 24, 1978. As he was walking toward
the corner and masturbating, he saw Larry running toward him. Bell attempted to return to his
truck but arrived there at the same time as Larry. Larry then struck Bell on his left ear, and as
he fell to the ground, Larry took the keys out of the vehicle's ignition. Bell heard Larry say,
"Goddamn pervert," and, "You have to be punished for this." When Larry, who was still
screaming at Bell, stepped to the back of the truck, Bell put on his pants.
      Bell said he was "fearful" and had no path of retreat, so he pulled a pistol out of the truck,
pointed it at Larry's head, and said, "Don't hit me again." When Bell asked for his keys, Larry
doubled up his fist and struck him while Bell "kept snapping out shots" until Bell hit the ground. 
Bell got up off the ground, pulled a rifle out of his truck, and again demanded his keys. Bell
stated that he did not point the rifle at Larry but followed him into his garage where Larry sat
down. As he bent down to retrieve his keys, he tripped and the rifle discharged. Bell, who noted
that he had not meant to kill the decedent, then fled, as Lang screamed at him. 
      Bell testified that when Larry hit him, he burst his eardrum, that he was in great pain, and that
he was scared. 
      In reviewing the sufficiency of the evidence, we consider all the evidence—that introduced
by the state and the defense—in the light most favorable to the verdict. See Jackson v. Virginia,
443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979); Madden v. State 799 S.W.2d
683, 686 (Tex. Crim. App. 1990). The Code of Criminal Procedure provides that reconciliation
of conflicts and contradictions in the evidence is within the province of the jury. Tex. Code
Crim. Proc. Ann. art. 38.04 (Vernon 1979); Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim.
App. 1986). The jury may believe some witnesses and refuse to believe others, and it may accept
portions of a witness' testimony and reject other portions. Losada, 721 S.W.2d at 309. On
appeal, we will not reverse a conviction because of conflicts in evidence if there is enough credible
evidence to support the conviction. See id. 
      Several eye witnesses testified that Bell shot Larry, followed him into the garage, shot him
again at close range after Larry gave him his keys, went back to his truck and got a rifle, returned
to the garage and shot Larry again. Bell claimed that Larry hit him, threatened him, and that he
accidentally shot Larry with the rifle when he tripped. This evidence conflicts with the State's
evidence. The jury chose to believe the State's witnesses and could have found from the evidence
that Bell acted coldly, deliberately, and without passion or provocation. See id. Thus, the
evidence was sufficient for a rational fact-finder to have found beyond a reasonable doubt that Bell
did not act out of sudden passion and to have found the essential elements of murder. We overrule
point one.
      In his second point, Bell contends that he was denied effective assistance of counsel. The
standard of review for evaluating claims of ineffective assistance of counsel is two-pronged. 
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Novak v. State,
837 S.W.2d 681, 683 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). First, the appellant must
show that counsel's representation fell below the objective standard of reasonableness. Strickland,
466 U.S. at 688, 104 S.Ct. at 2064; Novak, 837 S.W.2d at 683. That is, we must determine
whether appellant's counsel's performance failed to constitute reasonably effective assistance of
counsel. See Ex Parte Menchaca, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993). If so, he must
then show the probability that, but for counsel's errors, the result of the proceeding would have
been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Novak, 837 S.W.2d at 683. If
there is any basis for trial strategy to have been a reason for counsel's action, then further inquiry
is improper. Newsome v. State, 703 S.W.2d 750, 755 (Tex. App.—Houston [14th Dist.] 1985,
no pet.). 
      Bell argues that he was denied effective assistance of counsel when his attorney failed to
object when the prosecutor impeached him with his post-arrest silence. He contends that during
the guilt-innocence phase of the trial, Sergeant N.K. Kanstrup testified that, after his arrest, Bell
was apprised of his constitutional rights. Kanstrup then testified without objection that Bell had
the opportunity on a number of occasions to tell Kanstrup "his version of what had happened out
there." 
      However, on review of the record, Bell originally attempted to introduce his own post-arrest
statements. The record reflects that Bell was attempting to show that Kanstrup did not make any
effort to recover or preserve evidence that supported Bell's version of the incident, including
statements made to the officers. On redirect the prosecutor then followed up on an answer by
Kanstrup during cross-examination and asked him to explain what he meant by Bell's
"opportunities to tell his side of the story." The complained of cross-examination was a further
follow-up of this line of questioning that was originally started by Bell in an attempt to show that
the police selectively collected and preserved evidence, ignoring evidence that supported Bell's
theory of self-defense.
      When a party introduces matters into evidence, he invites the other side to reply. Kincaid v.
State, 534 S.W.2d 340, 342 (Tex. Crim. App. 1976). Thus, by trying to shore up his defense
strategy through questions about his post-arrest statements to the police, Bell "opened the door"
to the admission of his post-arrest silence. Because evidence of his post-arrest silence was
admissible, Bell's counsel cannot be faulted for not objecting to its admission. This is no evidence
of ineffective assistance. See Newsome, 703 S.W.2d at 755; Menchaca, 854 S.W.2d at 131. We
overrule point two.
      In his third point Bell argues that the court erred in denying his request for a jury instruction
on voluntary conduct. The Penal Code provides that:
(a) A person commits an offense only if he voluntarily engages in conduct, including an
act, an omission, or possession. 
Tex. Penal Code Ann. § 6.01(a) (Vernon Supp. 1994). By including section 6.01 in the Penal
Code, the Legislature intended to assure that persons not be criminally punished for involuntary
conduct. Vollbaum v. State, 833 S.W.2d 652, 655 (Tex. App.—Waco 1992, pet. ref'd). 
Homicide is punishable only when the conduct is voluntary and the accused has the culpable
mental state. Id.
      Generally, an instruction on voluntariness is necessary only if the defendant admits
committing the act charged and seeks to absolve himself from criminal responsibility for engaging
in the conduct. Id. Thus, we must determine if the defense of "voluntariness" was raised by the
evidence. 
      According to Bell's testimony, he tripped over his blue jeans and fell while holding the rifle
and accidentally shot Larry. However, by the time Bell claimed that he tripped and fell, he had,
according to the medical examiner's testimony, already fatally shot Larry in the head and
abdomen. Moreover, Bell claims that he shot Larry because he was scared and wanted to get his
keys back. Larry had given Bell his keys, yet Bell shot him again, returned to the truck, got his
rifle, and then returned to the garage and shot Larry again with the rifle. Thus, the defense of
voluntariness would not have absolved Bell from criminal responsibility for fatally shooting Larry,
and, therefore, he was not entitled to an instruction on voluntariness. See id. We overrule the
third point and affirm the judgment.


                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 2, 1994
Publish