# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00298-CR

**Carla Sheridan, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147th JUDICIAL DISTRICT
### NO. 3030264, HONORABLE WILLIAM BACHUS, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Carla Sheridan guilty of theft. *See* Tex. Pen. Code Ann. § 31.03 (West Supp. 2005). The district court sentenced her to two years' confinement in a state jail facility, probated for five years. In her sole issue on appeal, Sheridan contends that the district court abused its discretion in admitting hearsay testimony. We will affirm the conviction.

## BACKGROUND

The parties agree that Sheridan was the second-assistant manager at a McDonald's restaurant in Austin. She was in charge of managing the restaurant on July 15 and 16, 2002, while the head manager was out of town. Her duties included depositing each day's cash receipts at a bank. On Monday, July 15, 2002, Sheridan did not report to work as scheduled. The following day, Vanessa Johnson, who was responsible for scheduling the employees at several area McDonald's

restaurants, learned that several deposits were missing from the safe at the McDonald's where Sheridan had worked and that the bank did not receive the deposits. Sheridan never returned to work at the restaurant.

At trial, Johnson testified that the restaurant's policy required deposits to be taken to the bank twice daily, once in the morning and once before dark. This procedure promoted the safety of their employees and ensured that the amount of only one deposit would be held in the restaurant's safe at any given time. Johnson further testified that, on Tuesday morning, she expected Sheridan to attend a training session on employee scheduling. When Sheridan did not arrive for her training, Johnson called her. Johnson confirmed that Sheridan had been responsible for making the deposits that were missing. Sheridan told Johnson that she had driven by the store at three in the morning and saw maintenance men cleaning the store. Sheridan claimed that she picked up the deposits and took them to the bank's night drop because she thought that the maintenance men would steal the deposits if she left them in the safe. Johnson testified that no one in the store at that hour would have had access to the safe. She added that taking the deposits to the bank at that hour is against company policy.

Arlene Trejo, a "swing manager" who assisted the managers on duty at the McDonald's restaurant where Sheridan had worked, testified that on July 15 she called Sheridan to determine the reason for Sheridan's absence. Sheridan told Trejo that she did not attend work because she was having personal and financial problems. When Trejo asked Sheridan whether she had delivered the deposits, Sheridan told her that she had taken the deposits and they were at the bank. Trejo also agreed that Sheridan and the restaurant manager, who was out of town, were the

2

only people responsible for taking deposits to the bank. Daniel Hernandez, a supervisor for several McDonald's restaurants in Austin, including Sheridan's, testified that he investigated the incident and determined that five deposits totaling $10,784.14 were missing. He placed several telephone calls to Sheridan, leaving messages requesting a call to discuss her employment status and the missing deposits, but Sheridan did not return his calls. Hernandez testified that, during his investigation, he spoke to the owner of the maintenance company that had cleaned the restaurant on the night before the deposits were reported missing. On cross-examination, defense counsel asked Hernandez if he "made sure to bring somebody [to trial] who was there that night [and ] who saw [his] client." Hernandez denied bringing any such witness to trial. On redirect and over Sheridan's hearsay objection, Hernandez testified that the owner of the maintenance company told him that he had seen Sheridan at the store in the early morning hours before the deposits were reported missing and that "she was in the store for a little while, then she just left."

The jury also heard Sheridan testify that the State's witnesses "did not have the information that they need[ed]" and that all of them were lying.

## DISCUSSION

Sheridan's sole issue on appeal is that the district court erred in admitting Hernandez's testimony because it was inadmissible hearsay. *See* Tex. R. Evid. 801(d), 802. The State argues that the statements were admissible because they were invited by Sheridan's questioning on cross-examination. Furthermore, the State contends that any error was harmless because the statement was cumulative of other, properly admitted evidence of Sheridan's guilt and had no effect on the jury.

3

**Standard of review**

We review the trial court's decision to admit evidence under an abuse of discretion standard and will not reverse that decision absent a clear abuse of discretion. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Id.*; *see also Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996).

**Invited hearsay**

The rule of optional completeness states that

> [w]hen part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given. "Writing or recorded statement" includes depositions.

Tex. R. Evid. 107. Under the rule of optional completeness, "evidence which is used to fully explain a matter opened up by the other party need not ordinarily be admissible." *Fuentes v. State*, 991 S.W.2d 267, 279 (Tex. Crim App. 1999). The necessity of completeness justifies the introduction, through the "open door," of "hearsay, or other matter that would otherwise be incompetent." *Fuentes*, 991 S.W.2d at 279; *Clay v. State* 102 S.W.3d 794, 797 (Tex. App.—Texarkana 2003, no pet.) (reasoning that "[w]here defendant delves into part of a subject, the State is entitled to inquire into the whole of the matter in order to explain it or correct a false impression, even if the later evidence might otherwise be inadmissible"); *Bell v. State*, 867 S.W.2d 958, 962 (Tex. App.—Waco

4

1994, no pet.) (introduction of post-arrest statements to police by defendant invited reply by State). The scope of the rule is limited to the parts or items germane to the part or item offered (matters "on the same subject"). *Fuentes*, 991 S.W.2d at 279. Additionally, the matter offered on the justification of completeness may be excluded if its prejudicial effect outweighs its probative value. *Id.*; *see also* Tex. R. Evid. 403.

During Hernandez's cross-examination, defense counsel elicited the following testimony:

Q. Now, you did say you did your own kind of little investigation, didn't you?

A. Correct.

Q. About calling the crew that was in there cleaning or fixing the fryers?

A. Yes.

Q. Did you make sure to bring somebody who was there that night who saw my client?

A. Did I make sure to bring somebody?

Q. Yes.

A. Today?

Q. Yes.

A. I don't have anybody with me.

Q. It would be pretty good evidence, wouldn't it?

A. It would.

5

Through this testimony, counsel implied that Hernandez did not know of anyone on the cleaning crew who saw Sheridan at McDonald's in the early morning hours before the deposits were reported missing. This invited a response from the State. *See Bell*, 867 S.W.2d at 962. The following exchange took place on redirect:

Q. [State]: You attempted to contact the owner of the maintenance company correct, or did you contact the owner?

A. I did contact the owner.

Q. I think now you can tell us what was your answer.

[Defense counsel]: I object to hearsay. He never mentioned—he never went into the conversation. It was that they didn't bring a witness.

THE COURT: Counsel, as I recall in response to your question, didn't you go into this?

[Defense counsel]: Not the conversation, just did you bring a witness. You contacted them, did you bring, did you bring a witness with you today.

THE COURT: I am going to overrule your objection.

Q. [State] Can you tell us with regard to why you didn't bring a witness from the maintenance company today?

A. To be honest with you, I didn't know the trial was today. I was in San Antonio evaluating a restaurant.

Q. What was the result of your conversation with the maintenance company?

A. I had talked to the owner and asked them basically, like I said, was there anybody that came in our shop that you would recognize, didn't recognize. Like I said, they do work for us, they have done work for us for years so they know our security procedures and they don't let anybody into the restaurant if they don't know them. They said that a manager had come in and I asked them who. They described them and they described Carla. I said well, you have seen her here

6

during the day, and they said, yeah, it's the girl that's usually here working during the day shift and running the restaurant. They told me a little bit about her. I said what did she do. They said I don't know what she did. I was on the roof . . . He said she was in the store for a little while, the she just left.

Sheridan does not respond to the State's argument that defense counsel's questioning on cross-examination opened the door to Hernandez's statements. We hold that the trial court did not abuse its discretion by admitting Hernandez's testimony.

**Harmless error**

In the alternative, the State argues that even if the admission of Hernandez's statements were an abuse of discretion, the conviction should be upheld because the error was harmless. The admission of inadmissible hearsay is non-constitutional error. *Lee v. State*, 21 S.W.3d 532, 538 (Tex. App.—Tyler 2000, pet. ref'd). Non-constitutional errors that do not affect substantial rights must be disregarded. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A criminal conviction should not be overturned because of non-constitutional error if, after examining the record as a whole, the reviewing court has fair assurance that the error did not influence the jury, or had but a slight effect on it. *Cf. Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see also* Tex. R. App. P. 44.2(b). In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the

7

character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002). The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable. *Id.* Evidence of the defendant's guilt is also a relevant factor in conducting a harm analysis under Rule 44.2(b). *Id.* at 358.

Here, Hernandez's statements had, at most, a slight effect on the jury. His testimony suggested only that the owner of the maintenance company saw Sheridan at McDonald's, not that the owner observed any wrongdoing. Moreover, his testimony was cumulative of other, properly admitted evidence of Sheridan's guilt. Johnson testified that Sheridan told her that she had stopped at the restaurant in the early morning hours before the deposits were reported missing. She also testified that no one in the store at three o'clock in the morning would have had access to the safe. Additionally, although the bank did not receive the deposits, Trejo testified that Sheridan told her that she had taken them to the bank. Trejo agreed that Sheridan and the restaurant manager, who was out of town, were the only people responsible for taking deposits to the bank. Trejo and Johnson testified that, after the deposits were reported missing, Sheridan failed to appear for work at McDonald's and she never returned to her job. Trejo testified that Sheridan attributed her absence from work to personal and financial problems. Hernandez testified that Sheridan did not return any of his calls requesting a discussion about her employment status and the missing deposits. This was sufficient evidence of Sheridan's guilt. Any error, therefore, in admitting Hernandez's testimony about his conversation with the owner of the maintenance company was harmless. *See Motilla*, 78 S.W.3d 352 at 360.

## CONCLUSION

We overrule Sheridan's sole point of error and affirm the conviction.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   August 4, 2006

Do Not Publish