

NUMBERS 13-07-00187-CR
13-07-00189-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JESUS DE LEON,**                                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                      **Appellee.**

**On appeal from the 404th District Court of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Garza**

Appellant, Jesus De Leon, was charged by indictment with: (1) one count of aggravated sexual assault of a child ("Count 1"), *see* TEX. PENAL CODE ANN. § 22.021(a) (Vernon Supp. 2007); (2) one count of sexual performance by a child ("Count 2"), *see id.* § 43.25(b), (d) (Vernon Supp. 2007); and (3) two counts of possession of child

pornography ("Counts 3 and 4") in cause number 13-07-187-CR, *see id.* § 43.26(a) (Vernon 2003). Additionally, Jesus was charged by indictment with twenty counts of possession of child pornography in cause number 13-07-189-CR, *see id.* § 43.26(a).[1] Jesus pleaded guilty to all of the charges contained in the indictments and the trial court assessed punishment. By four issues, Jesus contends that his convictions should be reversed and remanded for trial based on: (1) a conflict of interest which rendered his trial counsel's assistance ineffective; and (2) the trial court's refusal to allow him to withdraw his guilty plea. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2006, Jesus was indicted in cause number 13-07-187-CR by a Cameron County grand jury for the following crimes: (1) aggravated sexual assault of a child; (2) sexual performance by a child; and (3) two counts of possession of child pornography. Subsequently, in July 2006, Jesus and his brother, Adrian, were charged by indictment in cause number 13-07-189-CR with twenty additional counts of possession of child pornography. Whether Jesus committed these crimes is not at issue; Jesus admitted on several occasions that he committed these crimes.[2] The issue in this appeal pertains primarily to the legal representation provided to Jesus by Gary Ortega.

On May 30, 2006, Jesus filed a motion to suppress evidence of child pornography obtained as a result of an allegedly improper search and seizure of the house where Jesus

---

[1] This opinion will dispose of cause numbers 13-07-187-CR and 13-07-189-CR.

[2] The record reflects that Jesus, at various times, sexually assaulted his eight-year-old niece. The record further reflects that at least on one occasion, Jesus videotaped himself engaging in oral sex with his niece and another episode of oral sex with a small dog. Furthermore, the record contains evidence of numerous images of child pornography found on Adrian De Leon's computer, which Jesus admitted to downloading.

and Adrian resided. Jesus filed a second motion to suppress on June 6, 2006, alleging that all statements he made to law enforcement were involuntary, coerced, and enticed. Specifically, Jesus noted that:

> **Detectives from Brownsville Police Department[,] in taking the confession of the defendant Jesus De Leon[,] did use his sister[,] Rocio Adriana De Leon[,] and the mother of the victim to extract and coerce a statement from the defendant despite the fact he advised the detective he did not wish to speak to his sister. The sister was allowed to interrogate the defendant in the presence of detectives. Further[,] during the reading of defendant's rights[,] he advised the detectives he wished an attorney and was not allowed to communicate with one.**

(Emphasis in original).

On January 22, 2007, the State filed a motion for an in camera inspection of certain evidence, which included the videotape Jesus recorded depicting himself engaging in sexual acts with his eight-year-old niece and the images of child pornography found on the computer used by both Jesus and Adrian.

At a hearing conducted on January 25, 2007, the State informed the trial court that Jesus had agreed to withdraw his motion to suppress in exchange for the State's withdrawal of its motion for an in camera inspection of the videotape and computer images. Also at this hearing, Jesus notified the trial court of a plea agreement between him and the State with respect to both indictments. As a result of the plea agreement, Jesus pleaded guilty to one count of aggravated sexual assault of a child, one count of sexual performance by a child, and two counts of possession of child pornography.[3] In exchange for the plea, the State agreed to dismiss the entire indictment against Adrian in cause number 13-07-189-CR.

---

[3] The plea agreement, which Jesus signed, also stated that, among other things, Jesus was not coerced to enter into the plea agreement.

On March 5, 2007, the trial court sentenced Jesus to: (1) fifty years' imprisonment for the one count of aggravated sexual assault of a child; (2) twenty years' imprisonment for the one count of sexual performance of a child; and (3) ten years' imprisonment for each of the two counts of possession of child pornography. The trial court ordered all of the sentences imposed to run concurrently.

On appeal, Jesus states that Gary Ortega represented both brothers in these matters.[4] Jesus alleges that a family member later disclosed to him that Ortega was paid $3,500.00 to represent Adrian. Jesus argues that Ortega never notified him of this payment. Jesus contends that once the payment was received, Ortega began to pursue a strategy adverse to his legal interests, which included persuading Jesus to plead guilty to all charges in exchange for the dismissal of the charges against Adrian. As such, Jesus argues that a conflict of interest existed, thus rendering Ortega's assistance as counsel ineffective.

The State counters Jesus's recitation of the facts by arguing that when Jesus entered into the plea agreement, he was represented by Ortega, but Adrian had not yet secured representation. The State contends that because Ortega was not the attorney of record for Adrian at the time Jesus entered into the plea agreement, no conflict of interest existed.

On March 14, 2007, Jesus filed a pro se motion to withdraw pleas of guilt, a pro se

---

[4] The record contains documentation of Ortega's representation of Jesus. This document provides that "[d]efendant, JESUS DE LEON, retained GARY ORTEGA, and he consents to GARY ORTEGA's appearance as attorney of record in this cause." The record reflects that Ortega filed an appearance of counsel as to Adrian on February 5, 2007, approximately two weeks after Jesus entered into the plea agreement with the State. This document provided that "[d]efendant, **ADRIAN DE LEON**, retained **GARY A. ORTEGA**, and he consents to **GARY A. ORTEGA's** appearance as attorney of record in this cause."

notice of appeal, and a pro se motion to appeal with the trial court raising issues as to Ortega's effectiveness as counsel, among other things.[5]  On March 15, 2007, Jesus filed a pro se motion to request court-appointed appellate counsel.[6]  The trial court certified Jesus's right to appeal on March 28, 2007.  On April 2, 2007, Jesus filed an amended motion for new trial and motion in arrest of judgment, both of which the trial court denied on April 9, 2007.  This appeal ensued.

## II. STANDARD OF REVIEW

Our review of counsel's performance must be highly deferential.  *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  A defendant seeking relief for ineffective assistance of counsel must demonstrate that:  (1) counsel's performance failed to constitute reasonably effective assistance by falling below an objective standard of reasonableness under the prevailing professional norms;  and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 694; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  The burden of proving ineffective assistance of counsel is on the appellant and requires proof by a preponderance of the evidence.  *Stafford v. State*, 813 S.W.2d 503, 506 n.1 (Tex. Crim. App. 1991); *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).  An allegation of ineffective assistance of counsel will be sustained only if it is firmly founded in the record.  *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); *Stone v. State*, 17 S.W.3d 348, 350 (Tex. App.–Corpus Christi 2000, pet. ref'd).

---

[5] On appeal, Jesus focuses on the legal representation provided by Ortega and the trial court's alleged refusal to consider deferred adjudication as punishment.

[6] Philip Cowen was appointed as Jesus's appellate counsel.  The effectiveness of his representation is not the subject of this appeal.

5

Effective assistance of counsel is gauged by the totality of the representation from the pre-trial representation of the accused through the punishment stage of the trial. *Ex parte Walker*, 777 S.W.2d 427, 431 (Tex. Crim. App. 1989). Thus, the trial as a whole must be reviewed and not isolated incidents of counsel's performance. *Cannon*, 668 S.W.2d at 403. The standard of review for ineffective assistance of counsel is the same for all phases of the trial. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

Claims of ineffective assistance of counsel based on conflicts of interest are controlled by *Cuyler v. Sullivan*, 446 U.S. 335 (1980), a case decided four years before *Strickland*. *See Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997). Under this authority, an actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest. *Id.* at 564. A defendant demonstrates a *Cuyler* violation if he can show that: (1) his counsel was burdened by an actual conflict of interest; and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler*, 446 U.S. at 348-50. However, the conflict must be more than merely speculative. *James v. State*, 763 S.W.2d 776, 778-79 (Tex. Crim. App. 1989). Until a defendant shows his counsel actively represented conflicting interests, he has not established the predicate for his claim of ineffective assistance. *Cuyler*, 446 U.S. at 350. A showing of the "possibility of a conflict of interest" is not sufficient to overturn a criminal conviction. *Id.* However, if an appellant shows an actual conflict, prejudice is presumed. *Id.*

6

## III. ANALYSIS

In his first three issues on appeal, Jesus takes issue with the representation provided by Ortega. Specifically, Jesus contends that a conflict of interest arose because Ortega represented both him and his brother, both of whom had adverse defenses. Jesus further argues that he was essentially left without counsel because Ortega represented Adrian to his detriment. Finally, Jesus asserts that Ortega's representation was ineffective under the *Strickland* harm analysis because Ortega failed to urge a motion to suppress under article 38.23 of the code of criminal procedure. *See Strickland*, 466 U.S. 487; TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). The State counters by arguing that: (1) Jesus has waived his right to appeal, and, therefore, this appeal should be dismissed; and (2) the evidence does not demonstrate that Ortega labored under an actual conflict of interest.

### 1. Jesus's Right to Appeal

We begin by addressing the State's waiver argument.[7] The State contends that as a part of Jesus's plea agreement with the State, Jesus admitted guilt and expressly agreed to waive all rights to appeal if the trial court accepted the State's sentencing recommendation. The State notes that the trial court did sentence Jesus in accordance with the plea agreement and that therefore, the trial court did not have authority to "unwaive" Jesus's lost right to appeal.

---

[7] On April 19, 2007, the State filed a motion to reconsider the trial court's granting of permission for Jesus to appeal or, alternatively, to judicially acknowledge that Jesus has reneged on the plea agreement. In its motion, the State argues that Jesus explicitly waived his right to appeal in the plea agreement and that Jesus did not provide any evidence demonstrating that the waiver of appeal was involuntary. The State further argued that Jesus has reneged on the plea agreement by filing his notice of appeal. The State also acknowledged in its motion that it "will be seeking to re-indict Adrian De Leon, the co-defendant in cause number 06-CR-2746-G."

7

"In a plea bargain case—that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant—a defendant may appeal only: (A) those matters that were raised by written motion filed and ruled on before trial; or (B) after getting the trial court's permission to appeal. TEX. R. APP. P. 25.2(a)(2); *see* CODE CRIM. PROC. ANN. art. 44.02 (Vernon 2006) (providing that a defendant in any criminal action may appeal a guilty plea if his punishment does not exceed the punishment recommended by the prosecutor and if he has permission of the trial court, except for matters that have been raised by written motion prior to trial). "The plain import of [former rule 25.2(b)(3)] is that appeal from plea-bargain cases are limited to the situations set forth in the rule." *Woods v. State*, 108 S.W.3d 314, 316 (Tex. Crim. App. 2003). Therefore, before examining the record, we first determine if the agreement in this case incorporated a "punishment recommended by the prosecutor and agreed to by the defendant." *See* TEX. R. APP. P. 25.2(a)(2).

An agreement between the State and an accused may not necessarily include as one of its terms an agreed punishment recommendation. *Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003); *Ramirez v. State*, 89 S.W.3d 222, 225 n.4 (Tex. App.–Corpus Christi 2002, no pet.). Any concession by the State in exchange for the accused's plea creates a plea bargain. *Ramirez*, 89 S.W.3d at 225 n.4. Only a plea bargain that incorporates an agreed recommendation as to punishment that is accepted by the court, however, triggers restrictions on our review power contained in rule 25.2(a)(2) of the rules of appellate procedure. *Id.*; *see* TEX. R. APP. P. 25.2(a)(2).

In *Shankle*, the court of criminal appeals delineated two main categories of plea bargains that affect punishment: (1) sentence-bargaining; and (2) charge-bargaining. *Shankle*, 119 S.W.3d at 813. In addition to the sentence-bargaining that occurs in the more familiar form of an agreement to a finite or definite punishment, an agreement to a punishment cap also is an "agreed recommendation as to punishment." *Threadgill v. State*, 120 S.W.3d 871, 872 (Tex. App.–Houston [1st Dist.] 2003, no pet.). Similarly, an agreement to dismiss a pending charge, or not to bring an available charge, is charge-bargaining that effectively puts a cap on punishment at the maximum sentence for the charge that is not dismissed. *Shankle*, 119 S.W.3d at 813.

The record in the present case demonstrates that the plea agreement involved sentence bargaining and that the trial court sentenced Jesus in accordance with the plea agreement. Jesus's plea agreement with the State filed on January 25, 2007, provided that in exchange for a plea of guilty, the State would "cap punishment at seventy-five years in the Texas Department of Corrections," and moreover, the State would "dismiss the entire indictment against the co-defendant [Adrian] . . . ." The trial court accepted the plea agreement and subsequently sentenced Jesus to serve a maximum of fifty years' in the Texas Department of Corrections, which was within the sentencing cap recommended by the State and, accordingly, "the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant . . . ." TEX R. APP. P. 25.2(a)(2).

We must now determine if Jesus raised matters by written motion that were ruled upon before trial or if he obtained permission from the trial court to appeal. *See id.* The record reflects that the trial court certified Jesus's right to appeal on March 28, 2007. In

its certification of Jesus's right to appeal, the trial court placed an "X" corresponding to the pre-printed statement: "is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal." Because this is a plea bargain case and because Jesus obtained permission from the trial court to appeal, we conclude that Jesus has preserved his issues for appeal. *See Monreal v. State*, 99 S.W.3d 615, 617 (Tex. Crim. App. 2003) (holding that when a defendant waives his right to appeal, he may not appeal unless the trial court grants permission); *see also Barcenas v. State*, 137 S.W.3d 865, 866 (Tex. App.–Houston [1st Dist.] 2004, no pet.) (per curiam) (same); *Zaragoza v. State*, No. 13-04-391-CR, 2005 Tex. App. LEXIS 3441, at **4-5 (Tex. App.–Corpus Christi May 5, 2005, no pet.) ("A valid waiver of appeal, whether negotiated or non-negotiated, will prevent a defendant from appealing without the consent of the trial court . . . .").

**2. Conflict of Interest**

Jesus's entire argument pertaining to an alleged conflict of interest hinges upon his own conclusory allegation that Ortega represented both Jesus and Adrian prior to entering into the plea agreement with the State. However, the record does not support Jesus's contention. The record demonstrates that Jesus entered his guilty plea with the trial court on January 25, 2007, pursuant to the plea agreement with the State. As previously mentioned, Ortega filed an appearance of counsel stating that he represented Adrian on February 5, 2007. The record does not reflect that Ortega began representing Adrian prior to February 5, 2007. Jesus has not provided any evidence that Ortega labored under a conflict of interest while he represented him. Moreover, Jesus has not provided any

10

evidence that Ortega was paid $3,500 to represent Adrian to "get the State to drop the charges . . ." beyond his own speculative statements. Based on the record before us, we conclude that no conflict of interest existed. *See Cuyler,* 446 U.S. at 350 (noting that a showing of the "possibility of a conflict of interest" is not sufficient to overturn a criminal conviction); *see also James*, 763 S.W.2d at 778-79 (holding that a conflict of interest must be more than speculative).

## 3. Ineffective Assistance of Counsel

Essentially, Jesus's issues on appeal pertain to his frustration that he received fifty years' imprisonment while the charges against his brother were dropped.[8] Jesus argues, in many of his pro se motions, that the record should be supplemented with the following items which took place off the record: (1) that he did not answer truthfully when the trial court asked him if his plea was coerced; (2) his sister, Rosio De Leon, was "compelled and coerced" to confront him and ask him questions to obtain untrue statements which were used against him; and (3) he lied, based on instructions from Ortega, with respect to the trial court's questions as to whether he had read the pre-sentence investigation report, whether he understood the nature of the plea agreement, and whether he understood the risks of the plea agreement.[9] *See* TEX. R. APP. P. 34.5(c)(1), (d). In support of record supplementation, Jesus argues that the aforementioned items establish that Ortega's

---

[8] This argument is disingenuous because the plea agreement demonstrates that Jesus himself bargained for the dismissal of "the entire indictment against the co-defendant [Adrian] in Cause number 06-CR-2746-G." In addition, the record reflects that Ortega represented Jesus and not Adrian during the negotiation of the plea agreement; therefore, Jesus had the assistance of counsel during the plea negotiations.

[9] Jesus has not provided this Court with authority or argument establishing that Jesus was coerced or otherwise entered into the plea agreement involuntarily. In fact, this issue was not even argued on appeal. Jesus merely asserted this contention via unsupported allegations in his pro se notice of appeal to establish that Ortega failed to provide effective assistance of counsel.

11

actions amounted to ineffective assistance of counsel. However, on appeal, Jesus notes that "[a]s to the resolution of this issue, it makes very little difference if this Court supplements the record. Rather, as will be shown below, the fact that there was an actual conflict should have led to appointment of new counsel . . . ."

Jesus also argues that because Ortega withdrew his motion to suppress the videotape and the computer images containing child pornography, Ortega's performance fell below that which is acceptable. However, Jesus fails to overcome the presumption that Ortega's withdrawal of his motion to suppress "might be considered sound trial strategy." *See Strickland*, 466 U.S. 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 100-01 (1955)). The record indicates that Ortega agreed to withdraw his motion to suppress in exchange for the State's withdrawal of its motion for an in camera inspection of the videotape and computer images. We believe that there was some basis for concluding that Ortega's conduct was strategic in nature; therefore, further inquiry is improper. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (noting that in the absence of evidence of counsel's reasons for the challenged conduct, the appellate court will assume a strategic motivation and will not conclude that the conduct was deficient unless the conduct was so outrageous that no competent attorney would have engaged in it); *Aldrich v. State*, 104 S.W.3d 890, 896 (Tex. Crim. App. 2003) ("Appellate courts can rarely decide the issue of unreasonable performance because the appellate record rarely speaks to the strategic reasons that counsel may have considered."); *see also Bell v. State*, 867 S.W.2d 958, 961 (Tex. App.–Waco 1994, no pet.).

In reviewing the totality of the representation, we conclude that Jesus failed to

establish that a conflict of interest existed and that Ortega's conduct amounted to ineffective assistance of counsel; thus, he failed to satisfy the *Strickland* test. Accordingly, we overrule Jesus's first three issues on appeal.

**4. Deferred Adjudication and Jesus's Motion to Withdraw His Guilty Plea**

In his fourth issue on appeal, Jesus argues that the trial court erred in rejecting his request for deferred adjudication because it had rejected his plea agreement with the State without affording him the opportunity to withdraw his plea of guilty. Conversely, the State argues that there was no agreement for deferred adjudication. Instead, the plea agreement was merely an open plea that capped punishment at seventy-five years.

The record does not support Jesus's contention that he bargained for a chance to be placed on community supervision. In fact, the plea agreement provides, in relevant part, that: "The State opposes deferred adjudication in both Cause numbers, 06-CR-0405-G and 06-CR-2746-G." Clearly, there was no meeting of the minds with respect to the issue of deferred adjudication. *See Ex parte Moussazadeh*, 64 S.W.3d 404, 411-12 (Tex. Crim. App. 2001) ("We apply general contract law principles to determine the content of a plea agreement in a criminal case" and a reviewing court will not imply a deferred finding element of covenant "unless it appears from the plea agreement's express terms that both parties clearly contemplated this element or covenant"). Instead, the plea agreement provided, among other things, that the State agreed to cap punishment at seventy-five years in exchange for Jesus's plea of guilty.

Moreover, even though the trial court stated that it was finding Jesus guilty at the plea hearing, the court had not entered a written judgment; therefore, it was still entitled

13

to consider deferred adjudication.[10]  *See* CODE CRIM. PROC. ANN. art. 42.01, sec. 1 (Vernon 2006); *see also Anderson v. State*, 937 S.W.2d 607, 609 (Tex. App.–Houston [1st Dist.] 1996, no pet.) (holding that the trial court did not lose authority to grant deferred adjudication at the sentencing hearing after the defendant's stipulation of guilt and the trial court's finding of guilt); *Powers v. State*, 727 S.W.2d 313, 316-17 (Tex. App.–Houston [1st Dist.] 1987, pet. ref'd) ("Until the court finds the appellant guilty and enters the conviction, it can defer the adjudication of guilt . . . . [T]he court's oral finding of guilt did not divest the court of power to grant subsequent deferred adjudication.").  Furthermore, Jesus's trial counsel did not make a request for deferred adjudication at the sentencing hearing as illustrated by the following statements:

> MR. ORTEGA: . . . . [W]e are asking the court to be merciful towards him and in fact consider the minimum punishment of what they have asked for, Judge, and consider a couple years of psychological counseling and, in fact, consider five years of punishment on one indictment, Judge; five years of punishment on the second indictment of possession of child pornography. The plea agreement in this case, Judge, was that the indictments run concurrent.  I know we are asking for the minimum in this case. . . .

Moreover, the record reflects that the trial court accepted Jesus's plea agreement and sentenced Jesus within the terms of the agreement.  Therefore, based on the foregoing, we conclude that the trial court did not err in refusing to defer findings of guilt and in refusing to permit Jesus to withdraw his plea of guilty after the imposition of his sentence.  *See Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996) (holding that a plea agreement is a contractual arrangement and that it is not binding on all of the

---

[10] We note that a subsequent amendment to article 42.12 of the code of criminal procedure prohibits deferred adjudication if the defendant "is charged with an offense under Section 21.11, 22.011, or 22.021, Penal Code, regardless of the age of the victim . . . ." CODE OF CRIM PROC. ANN. art. 42.12, sec. 5(d)(2)(A) (Vernon Supp. 2007).  However, this issue was not raised with either the trial court or on appeal.

necessary parties until such parties agree to the terms of the contract); *see also Holland v. State*, 112 S.W.3d 251, 255 (Tex. App.–Austin 2003, no pet.) ("If the court chooses to accept the plea, it is bound to carry out the terms of the agreement."). Accordingly, we overrule Jesus's fourth issue on appeal.

## IV. CONCLUSION

Having overruled all of Jesus's issues on appeal, we affirm the judgments of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX.R.APP.P. 47.2(b)
Memorandum Opinion delivered and
filed this the 15th day of May, 2008.

15